THE PEOPLE *ex rel.* The Commissioners of Big Lake Special Drainage District, Appellants, *vs.* ROBERT DIXON, Highway Commissioner, *et al.* Appellees.

*Opinion filed December 17, 1931.*

C. Edgar White, for appellants.

Isaac K. Levy, and David B. Levy, for appellee Robert Dixon; Fletcher Lewis, State's Attorney, and Orwin H. Pugh, for appellee the county of Jackson.

Mr. Justice Duncan delivered the opinion of the court:

On September 20, 1930, a petition for writ of *mandamus* was filed in the circuit court of Jackson county in the name of the People, on the relation of the commissioners of the Big Lake Special Drainage District in the county of Jackson and State of Illinois, and summons, returnable September 30, 1930, was ordered to issue against appellees, Robert Dixon, as highway commissioner of the town of Sand Ridge, in said county, and the county of Jackson. After their motions to dismiss the petition had been overruled appellees filed separate demurrers to the petition, and these demurrers were sustained. The relators electing to abide by their petition, have appealed to this court from the judgment dismissing the petition.

The allegations of the petition for the writ are, in substance, the following: The relators are the commissioners of the Big Lake Special Drainage District in the county of Jackson and State of Illinois, which is organized under the Farm Drainage act and embraces lands, roads and streets in Jackson county in the towns of Kincaid, Sand Ridge and Fountain Bluff. On November 22, 1924, the relators made and levied an assessment of $3500 as a tax for the revenue year 1924 upon the lands, lots, railroads, public roads and property of the district, to be apportioned and

extended as other drainage taxes and assessments are apportioned and extended, and filed a certificate of the levy with the county clerk. On December 1, 1925, the relators made and levied an assessment of $6058 for the payment of interest on bonds of the district and of $1927.80 for current and ordinary expenses, a total of $7985.80, as a tax for the revenue year 1925 upon the lands, etc., of the district, to be apportioned and extended as other drainage taxes are apportioned and extended, and filed certificates of said levies with the county clerk. On September 24, 1925, the relators, for the purpose of reconstructing, repairing and improving the ditches and works of the district, made and levied a special assessment of $119,143.72 upon all the lands, etc., of the district benefited by drainage in the district, and filed their certificate of the levy with the county clerk, and also filed with the clerk their assessment roll or tax list of the special assessment. On January 1, 1926, there having been paid of the aggregate special assessment of $119,143.72 the sum of $25,765.13, leaving unpaid the sum of $93,370.59, and the relators being about to issue, register in the office of the Auditor of Public Accounts and sell the bonds of the district on the remaining unpaid portion of the special assessment, the relators made and entered an order modifying their former order and divided the remaining unpaid portion of the special assessment into eight installments of $9115, $9785, $10,450, $11,952, $11,765, $13,695, $13,565 and $15,000.59, respectively, the first installment to become due and payable on November 1, 1926, and one installment annually thereafter. Certain designated roads of the town of Sand Ridge lying within the district had been classified by the fractional figures .015, said figures representing the fractional part of all corporate taxes and special assessments of the district to be paid by the town of Sand Ridge on account of benefits to the roads, and there was apportioned to said town, of the aggregate special assessment of $119,143.72, the sum

of $1787.19. The bonds to be, and which were, issued against the remaining unpaid portion of the special assessment were intended to be, and afterward were, registered in the office of the Auditor of Public Accounts, but it had been foreseen, and was apparent, that the bonds could not be so registered in time to enable the Auditor of Public Accounts to certify for collection in the district the amount of the obligation maturing on the bonds in the year 1926 and on February 1, 1927, and so the relators made and certified the levy of $6058 on December 1, 1925, to meet such obligation. On November 24, 1925, the relators made and levied an assessment of $2000 for drainage purposes, and the Auditor of Public Accounts made and certified for collection in the district on account of the obligation on the bonds of the district, an assessment of $13,587 as a tax for the revenue year 1926, and certificates of said levies were filed in the office of the county clerk. The Auditor of Public Accounts certified for collection in the district the following: For the revenue year 1927, $13,736, for the revenue year 1928, $10,936, and for the revenue year 1929, $13,554.

On November 22, 1924, and for a long time prior thereto, Robert Dixon was, and from that date has been and still is, the sole highway commissioner of the town of Sand Ridge, and it became and was his duty to pay from and out of the road and bridge taxes of the town the respective sums apportioned to the town of said assessments and to draw on and deliver to the treasurer of the drainage district his orders on the road and bridge fund of the town for said sums. Of the $3500 assessment of November 22, 1924, there was apportioned to the town of Sand Ridge $28.75, of the $7985 assessment of December 1, 1925, $136.10, of the aggregate assessments of $15,587 of November 24, 1925, $201.76, and of the assessments certified by the Auditor of Public Accounts for 1927, $274.73, for 1928, $210.39 and for 1929, $272.90. Dixon, as highway commissioner,

was advised and required to draw his respective warrants for said respective sums on the road and bridge fund of the town of Sand Ridge collected from road and bridge taxes in the town for the respective years in which the assessments were made, but he failed, neglected and refused, and still refuses, so to do. Taxes for road and bridge purposes were levied and extended on the property in the town of Sand Ridge as follows: For the revenue year 1924 sixty-six cents on the $100 valuation, aggregating $34,500; for 1925 sixty-six cents on the $100 valuation, aggregating $25,000; for 1926 sixty-six cents on the $100 valuation, aggregating $22,000; for 1927 thirty-three cents on the $100 valuation; for 1928 thirty-three cents on the $100 valuation, and for 1929 thirty-three cents on the $100 valuation. On information and belief the relators state that on August 27, 1929, there was of the proceeds of said tax levies in the road and bridge fund of the town of Sand Ridge subject to the order of Dixon, as highway commissioner, a sum of money more than sufficient to pay the entire amount of the assessments of the drainage district theretofore apportioned to the town of Sand Ridge, with interest accrued thereon, and that on September 15, 1930, there was in the road and bridge fund subject to the order of the highway commissioner a sum of money, the proceeds of the tax levies, more than sufficient to pay the entire amount, to-wit, $1174.54, theretofore apportioned to the town of Sand Ridge of the assessments of the drainage district, with accrued interest thereon. On August 27, 1929, the relators made a written demand on the highway commissioner for the immediate payment of the respective sums, and the aggregate thereof, theretofore apportioned to the town of Sand Ridge of the assessments of the drainage district, and on September 15, 1930, made another like written demand for the amount then due from the town of Sand Ridge.

On information and belief the relators state that the county of Jackson has or claims some interest in the roads

or parts of roads in the town of Sand Ridge and the drainage district, or in the up-keep, maintenance and repair thereof. Robert Dixon, as highway commissioner of the town of Sand Ridge, and the county of Jackson, were made defendants. The prayer of the petition is that it may be determined and adjudged what, if any, interest the county of Jackson has in the roads in the town of Sand Ridge which have been classified and assessed for benefits of drainage such as renders the county liable to pay any portion of the amount of the assessments of the drainage district, and that the relators recover from the county such sum of money, "or such other relief as to law, justice and right appertains and to the court shall seem meet and proper, together with the writ of *mandamus,* or such other writ or process as shall be deemed by the court available and proper;" that the court grant the writ of *mandamus* directed to Dixon, as highway commissioner, commanding him to draw on and deliver to the treasurer of the drainage district his order on the road and bridge fund of the town of Sand Ridge for a sum sufficient to pay the aggregate amount, to-wit, $1174.54, of all the sums apportioned and charged to the town of Sand Ridge of the assessments of the drainage district, with lawful interest thereon; or if it shall be determined that the county of Jackson is liable for and obliged to pay a part of said aggregate sum, then the order of the highway commissioner be drawn and delivered in a sum sufficient to discharge the remainder thereof, with lawful interest thereon; or if it be determined that on September 15, 1930, the day of the last demand on the highway commissioner, there was not in the road and bridge fund of the town of Sand Ridge sufficient money to pay the aggregate sum due the drainage district, then the highway commissioner draw and deliver his order for such sum of money as was in that fund and make and certify to the county clerk a certificate of levy of a tax sufficient to raise the balance of the aggregate sum and deliver his an-

ticipation warrant against the tax levy for the required amount; or if it be determined that a levy of a tax for road and bridge purposes in the town of Sand Ridge for the revenue year 1930 has been made which will be adequate to raise money for and discharge the aggregate sum, then that the highway commissioner draw his anticipation warrant, to be paid out of the taxes when collected, for said amount and deliver it to the treasurer of the drainage district.

There were attached to the petition eight exhibits, to which reference was made in the petition and which were by the reference attempted to be made a part of the petition. These exhibits are: (1) The certificate of the relators of the $3500 assessment of November 22, 1924; (2) the certificate of the relators of the $6058 assessment of December 1, 1925; (3) the certificate of the relators of the $1927.80 assessment of December 1, 1925; (4) the resolution of the relators making the $119,143.72 special assessment; (5) the certificate of the relators of the special assessment; (6) the certificate of the relators of the $2000 assessment of November 24, 1926; (7) and (8) copies of demands served on the commissioner of highways of the town of Sand Ridge.

The demurrer of each appellee was both general and special. The demurrer of Robert Dixon, as highway commissioner of the town of Sand Ridge, sets forth ten special grounds of demurrer, and that of the county of Jackson sets up twenty grounds of special demurrer.

A proceeding for the writ of *mandamus* is an action at law, and the pleadings are governed by the same rules as apply to other actions at law. (*People* v. *Board of Review,* 329 Ill. 388.) The petition for the writ takes the place of the alternative writ at common law and is in the nature of a declaration. (*People* v. *Lueders,* 287 Ill. 107.) The petition must set forth the material facts on which the petitioners rely, distinctly, clearly and specifically, so that they

may be admitted or traversed, and the allegations of the petition must show a clear right on the part of the relators to have performed, and a duty on the part of the person sought to be coerced to perform, the act. (*People* v. *Town of Mount Morris,* 145 Ill. 427; *People* v. *Busse,* 247 id. 333; *Quernheim* v. *Asselmeier,* 296 id. 494.) If the right of the relators must first be fixed or the duty of the officer sought to be coerced must first be determined, *mandamus* is not the proper remedy. *Hooper* v. *Snow,* 325 Ill. 53.

It is clear that the demurrer of the appellee the county of Jackson to the petition was properly sustained. The petition contains no positive allegations of any right on the part of the relators against the county, and the prayer of the petition for relief against the county is like the prayer of a bill in chancery. It asks for the recovery of any sum of money that may be found due the relators from the county or such other relief as shall seem meet and proper, together with the writ of *mandamus,* or such other writ or process as shall be deemed by the court available and proper. Before any relief could be granted against the county, assuming all the allegations of the petition to be true, there would have to be a determination of what, if any, right the relators have against the county. Furthermore, a writ of *mandamus* to enforce a right against the county would be of no avail unless directed to one or more of the officers of the county, because a county can act only through its officers, and no such officers are made parties defendant to the petition.

It should be noted the drainage district in this case is a special drainage district organized under the Farm Drainage act. In *Lake Fork Drainage District* v. *Highway Comrs.* 292 Ill. 340, and *Commissioners of Highways* v. *Drainage Comrs.* 127 id. 581, this court said that the only way to collect an unpaid assessment against public highways in a farm drainage district is to obtain a judgment at law against the highway commissioners, and if the judgment is not paid

to proceed by *mandamus*. Appellants take the position that that statement in those cases was *obiter dictum,* and that since the amendment of section 62 of the Farm Drainage act in 1925 (Laws of 1925, p. 365,) allowing an appeal by persons assessed for taxes in a special drainage district to the county court upon the question of benefits, there is no longer any reason why it should be necessary to obtain a judgment against a highway commissioner before proceeding by *mandamus* to compel him to pay the assessments made against him. After the repeal of section 27 and the amendment of section 62 of the Farm Drainage act in 1901, (Laws of 1901, pp. 148, 152,) and before the amendment of section 62 of that act in 1925, land owners in special drainage districts had no right of appeal from the assessment to the county court on the question of benefits, and therefore had the right, on the application of the collector for judgment against their land for unpaid assessments, to raise the question of benefits. (*People* v. *Allen,* 317 Ill. 92.) Since the amendment of 1925 to section 62, which gave a right of appeal from the assessment to the county court on the question of benefits, they no longer may raise the question of benefits on the collector's application for judgment for unpaid farm drainage district assessments. (*People* v. *Fisher,* 341 Ill. 621.) As to the assessment in this case that was made on November 22, 1924, there was no right of appeal to the county court on the question of benefits because the assessment was made before the amendment of 1925 went into effect. It follows that appellee Dixon, as highway commissioner, was entitled to a hearing on the question of benefits, so far as that assessment was concerned, before relators would have a clear right to collect from him the amount of the assessment allotted to the town of Sand Ridge because of benefits to roads. But even after the amendment of section 62 in 1925 the only question that can be raised on appeal to the county court from an assessment in a farm drainage district is the question

of benefits. Section 62 as amended in 1925 allows an appeal "to the county court in the same time and manner and upon the same grounds and with like procedure as provided in section 27." Section 27 provides that the appeal there authorized "shall be upon the ground only that such tax is a greater amount than the benefits to accrue to the land in question by the proposed drainage." On such appeal the question whether the assessment is made as provided by law and for purposes for which an assessment is authorized to be made by statute cannot be raised. An ordinary land owner might raise such question on the application of the collector for judgment against his land. (*People* v. *Peeples,* 291 Ill. 537; *People* v. *Brown,* 253 id. 578.) No judgment and order of sale of the highways of a town could be made on application of the collector, and the commissioner of highways has no opportunity to raise such question until he is sued for the portion of the assessment allotted to be paid by him, and until he has had the opportunity to raise such question and have it determined the drainage commissioners do not have a clear right to collect from him and it is not his established duty to pay the portion of such assessment allotted to him.

Appellants cite and rely upon the case of *Commissioners of Highways* v. *Drainage District,* 207 Ill. 17, in which it was held that the writ of *mandamus* was properly awarded to compel the taxing authorities of a town to levy a tax to pay a drainage assessment against the town when there had been no judgment first recovered for the amount of the assessment. The assessment in that case was made by a drainage district organized under the Levee act and the assessment had been confirmed by the county court. The methods of levying assessments in districts organized under the Levee Drainage act and in districts organized under the Farm Drainage act are entirely different, as was well pointed out in that case. Assessments in a levee district must be submitted to the county court and by it confirmed, and in

such court a person assessed may raise the question of the legality of the assessment as well as the question of benefits, and may not thereafter urge any objections to the assessment except such as question the jurisdiction of the county court to enter the judgment of confirmation. (*Spring Creek Drainage District* v. *Highway Comrs.* 238 Ill. 521.) This is not true of assessments made in farm drainage districts, as we have above noted.

The demurrer of Robert Dixon, as highway commissioner of the town of Sand Ridge, as well as that of the county of Jackson, was properly sustained.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*