(No. 27480.—

THE L. E. MYERS Co., Appellee, *vs.* THE SANITARY DISTRICT OF CHICAGO *et al.,* Appellants.

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

ERNST BUEHLER, MEYER C. EDELMAN, WILLIAM C. OEHLSEN, all of Chicago, and THOMAS F. DONOVAN, of Joliet, for appellants.

JOSEPH KEIG, of Chicago, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:.

In an action started by The L. E. Myers Company in the superior court of Cook county, a writ of *mandamus* was issued which commanded the officials of the defendant, the Sanitary District of Chicago, "forthwith to pay the sum of * * * ($5,885.23) of the funds of The Sanitary District of Chicago to the plaintiff, The L. E. Myers Company, a corporation." The Appellate Court affirmed the judgment and the sanitary district's petition for leave to appeal to this court was granted. The Myers company will be referred to as plaintiff and the sanitary district as defendant.

As grounds for reversal, defendant contends (a) that plaintiff has not shown a clear legal right to a writ of *mandamus;* (b) that the action was barred by the statute of limitations, and (c) that the judgment and writ were erroneous in directing defendant to pay generally when no appropriation had been made to meet such payment.

In March, 1924, the parties hereto entered into a written contract whereby plaintiff was to furnish all the material, equipment and labor necessary to the removal of certain spoil banks, the property of the defendant. The contract is not in evidence but, from admissions contained in the pleadings and the evidence, it appears that plaintiff's compensation was to be determined on a yardage basis of $1.32 per cubic yard for a part of the work, and 32 cents per cubic yard for the remainder. The work was started in May and completed in October. Defendant accepted the same October 16, 1924, and prior to acceptance or immediately thereafter paid plaintiff $41,196.50. Plaintiff did not reduce its claim to judgment but, in 1941, instituted this suit for a writ of *mandamus* to command the defendant to pay $5885.23. The action is not founded on the written contract in the sense that the issuance of a writ of *mandamus* would, in effect, direct specific performance of some of the provisions of the contract but it is based on the theory that defendant, being liable to pay said amount, has officially recognized such liability and taken action in reference to it which must be given the legal effect and conclusiveness of a judgment. Whether defendant has so obligated itself is one of the main controversial points in the case.

We are not concerned with a question of the liability of defendant to pay a sum greater than $5885.23, but whether official action of the representatives of the defendant has been such as to bring plaintiff's claim for said amount within the rule which permits the issuance of a

writ of *mandamus* to coerce the payment of a claim which has not been reduced to judgment. The rule is well established that *mandamus* will not lie on behalf of a petitioner until it has been shown that he has a clear legal right to the writ. (*People ex rel. Rude* v. *County of La Salle,* 378 Ill. 578; *People ex rel. Mason* v. *Reddick,* 181 Ill. 334; *People ex rel. German Ins. Co.* v. *Getzendaner,* 137 Ill. 234.) In the application of this rule it was said in the *Reddick case,* that "*mandamus* will only lie to enforce the payment of a claim ascertained to be due. Ordinarily this ascertainment is by way of a judgment. Doubtless where a municipality, by its legally constituted authorities, ascertains a claim to be due and unconditionally orders it paid, that order has the same effect as a judgment; but so long as the order is a conditional one *mandamus* will not aid parties to collect it, unless an offer is made to comply with the conditions imposed." In *Hooper* v. *Snow,* 325 Ill. 53, it was held that if the right of the petitioner must first be fixed or the duty of the officer sought to be coerced must first be determined, *mandamus* is not the proper remedy. See also *People ex rel. Comrs. Big Lake Dist.* v. *Dixon,* 346 Ill. 454.

The evidence shows that soon after the defendant accepted the work, October 16, 1924, a difference arose between the parties as to the yardage that should be paid for at $1.32 per cubic yard. In plaintiff's letter, dated November 5, 1924, addressed to defendant, it called attention to certain demands it was making and, on the basis of them, plaintiff claimed there was $35,266 due it. On November 30, 1925, plaintiff directed another letter to defendant in which it stated: "We wish to call to your attention that the last estimate which we received from you was dated October 1, 1924, and showed 95% completion. The amount that had been reserved as per contract, 12½% of payments, amounted to $5,885.23. The total estimated balance to be received by us under the contract being estimated

at $9,203.43. We had heard indirectly that on or about October 11th, your Engineering Department had made a final estimate but we never received this final estimate of the contract nor never received the 12½% retained. We subsequently rendered a claim for extra yardage which so far as we know has not been acted upon." If defendant made any reply to said letters, it does not appear in the record.

The record does not disclose that plaintiff did anything after sending the letter of November 30, 1925, until October 1, 1941, when, by its attorney, it sent a letter making demand for "that which the records of the District show to be due." It also stated in the letter that "It [the Myers company] has refused to make claim for the entire amount which it once regarded as being due." Soon after the transmission of this letter to defendant the instant suit was started. In its petition plaintiff set up the making of the contract, its performance, defendant's acceptance of the work on October 16, 1924, the payment of $41,196.57 on the contract, and alleged "that there is still due and owing from the defendant to your petitioner on account of said work done and performed as aforesaid the sum of Five Thousand Eight Hundred Eighty Five Dollars and Twenty-three cents ($5,885.23,) which said sum represents the moneys retained by the defendant pending final completion and acceptance of the said work specified in said written agreement."

It will be noted that in plaintiff's letter of November 30, 1925, it is stated that the $5885.23 withheld is 12½% of the amount due on the estimate of the work completed to October 1, 1924, which, it was said, was 95% of the entire contract job. It may be inferred that, soon after October 1, 1924, plaintiff completed the work which, according to its letter of November 30, 1925, would entitle it to $9203.43 in addition to the $41,196.57 already paid. In the letter of October 1, 1941, no reference is made to

the difference between $9203.43 and the $5885.23 or for the extra allowance of $35,266 referred to in the letter of November 5, 1924.

From the facts related, it is obvious that from the completion of the work to the sending of the letter of October 1, 1941, the amount due from defendant to plaintiff was not fixed. It is shown that defendant withheld $5885.23, but the terms and conditions under which the same was withheld do not appear in the record and, in the absence of the same or of some explanation, it can not be determined whether defendant was liable for the payment of said sum so long as plaintiff had its demands pending for a greater amount. If defendant had the right, under the contract, to withhold said sum of $5885.23 until plaintiff's demands for the larger amount, as claimed in its letter of November 30, 1925, were adjusted by agreement or withdrawn by plaintiff, then there never was a time when defendant was obligated to pay the $5885.23, until plaintiff waived its claims for the excess in its letter of October 1, 1941. It is evident from the facts related that there was nothing in the transactions that passed between the parties that amounted to an unconditional assumption of liability by defendant to pay $5885.23 and an order by its duly authorized officials to pay said amount.

Plaintiff contends that references in audit reports for the years 1932-1940, inclusive, and other records kept by defendant wherein reference was made to the item of $5885.23, are sufficient to give plaintiff's claim a standing so that a *mandamus* writ may issue to command payment. In 1929, the General Assembly amended the Chicago Sanitary District Act by adding several new sections. (Laws of 1929, page 364.) Section 5c (2,) so added, directs the State Auditor to appoint some proper person to make an examination and "audit of the affairs and books" of the defendant and to make a consolidated balance sheet as of the close of the last completed fiscal year. It further directs

that the State Auditor shall certify such audit and include the same in his biennial report. The costs of such audit are to be paid by the Sanitary district. Such examination and audit was made for the years 1932-1940 and defendant was furnished with a copy of such report. Under the heading designated as "Statement of Contracts" it included a reference to plaintiff's contract, stating that the estimated cost was $50,400, additional extras and credits $3176.88, latest estimate on actual cost $47,223.12, uncompleted work $141.32, completed $47,081.30, paid $41,196.57, reserve withheld $5885.23. These same figures were included in the audit for each of the years named. The evidence shows that defendant furnished such examiner data for such report and that the foregoing figures were taken from such data sheet. It also appears that the defendant's balance sheets, its annual budgets and appropriation ordinances reflected the item of $5885.23 in the totals of accounts payable, but there was no separate and distinct itemization of it.

Section 5(j) of the Chicago Sanitary District Act (Ill. Rev. Stat. 1937, chap. 42, par. 324j,) provided that the inclusion of an amount to meet a contract liability or to defray the expenses of any project or purpose shall not be construed as an act approving such liability but shall be regarded only as the making of a provision for a fund for the payment of the contract liability whenever such liability has been properly vouchered, audited and approved by the trustees of the district.

William H. Trinkaus, now chief engineer of the district, was an assistant chief engineer during the year 1924. In explanation of the withholding of said fund, he testified that after the work was fully completed and before there could be a delivery of the vouchers for the amount withheld, the contractor was required to sign a release which recited that he owed no money in connection with the work, that the bills he had contracted in reference to it had been paid in full and that he would make no further claim

against the district for the work performed. The matter was then to be approved by the board of trustees and payment ordered to be made. He stated that this was never done.

The inclusion of the item of $5885.23 in the annual reports of the audition and the subsequent act of carrying it into the balance sheets and the making of it as a part of the total of bills payable in the appropriation ordinance does not constitute an unqualified order of the defendant to pay plaintiff that amount.

From the facts related, it is obvious that there never was a time between the date of defendant's acceptance of the work in October, 1924, and the starting of the instant suit but what some action on the part of defendant's board of trustees remained to be taken before plaintiff's right to payment would become as fixed, final and conclusive as a judgment. It is not denied but what defendant had the right under the contract to withhold the fund in the first instance and we cannot assume for the purposes of this case that its right to continue to withhold was not in some way dependent upon the adjustment or withdrawal of plaintiff's additional demands.

The writ of *mandamus* is an extraordinary legal remedy and is used to coerce action when it is clearly shown that the law imposes a duty upon the respondent to act in the particular manner requested. The writ only issues to compel a respondent to act when it is his duty to do so without the writ. *Hooper* v. *Snow*, 325 Ill. 53; *People ex rel. Bruce* v. *Dunne*, 258 Ill. 441.

Under the views expressed, it is not necessary to consider other errors assigned. The judgments of the Appellate Court and the superior court are reversed.

*Judgments reversed.*