Catholic Foreign Mission Society of America, Inc., Appellee, v. Village of Glen Ellyn, DuPage County, Illinois, Appellant.

Gen. No. 10,395.

Opinion filed February 24, 1950. Released for publication March 15, 1950.

J. Edgar Kelly, of Chicago, for appellant.

Russell W. Keeney and Gordon Moffett, both of Wheaton, for appellee.

Mr. Justice Dove delivered the opinion of the court.

The circuit court of DuPage county denied a motion of the Village of Glen Ellyn to dismiss an amended petition for a writ of mandamus filed by The Catholic Foreign Mission Society of America. The Village elected to stand upon its motion, and a writ of mandamus was ordered to issue directing the Village to issue a permit authorizing petitioner to connect its buildings constructed and to be constructed upon certain real estate owned by petitioner and described in the petition with the sanitary sewer system of the Village. To reverse this judgment this appeal is prosecuted.

The petition as amended alleged that appellee is a corporation duly organized and existing under the laws of the State of Illinois; that it is the owner in fee simple of certain described real estate situated in DuPage county, Illinois; that said real estate was, prior to May 21, 1937, located within the corporate

limits of the Village of Glen Ellyn; that on said date the then owner of said real estate filed his petition in the county court of DuPage county to have said real estate disconnected from the Village and a judgment was thereafter rendered by said court disconnecting said real estate from said Village; that while said real estate was within the corporate limits of the Village, a special assessment was levied against a portion of the described real estate which the petitioner now owns and against other property in said Village to pay the cost of constructing a sanitary sewer system and sewage disposal plant; that the real estate of petitioner so assessed comprises virtually all of the land described in this petition; that the amount of the assessment levied against the real estate which the petitioner now owns for the benefits to be received by it from said sewer project was the sum of $2,997; that this special assessment was duly confirmed but subsequently the amount of benefits was reduced by order of the county court by 6.392 per cent, and that this assessment has been paid in full.

The amended petition further alleged that the ordinance which made provision for said sewer project created a sanitary sewer district comprising all of the territory falling within certain described boundaries; that petitioner's land was within said district; that certain land laying outside the corporate limits of the Village was acquired by condemnation proceedings for the construction of a disposal plant and certain easements were also so acquired over other land leading to the disposal plant; that section 2 of said ordinance reads in part as follows:

"The owners and occupants of the lots, blocks, pieces and parcels of land lying within said district hereinbefore described shall at all times hereafter be entitled to the use of and the benefits of the improvements herein provided.

"The right, permission, privilege, and authority are hereby given and granted to the present and future owners and occupants of the land within said district to open and connect all sanitary sewers with the sewers which now exist or which may be hereafter constructed within the said district, into and with the sewers described herein, subject to all lawful regulations as may be prescribed by the Board of Trustees of said Village."

The amended petition then alleged that in June 1945, petitioner applied to the Board of Trustees of the Village for permission to connect with the sanitary sewer system of the Village and that its application was denied; that petitioner is constructing a school upon its property, and on September 13, 1948, another application was made for permission to connect its buildings with said sewer system; that on November 22, 1948, the application was granted; that on November 27, 1948, the action of the Board of Trustees was vetoed by the president of the board and on December 20, 1948, the veto of the president was sustained.

The amended petition further alleged that another application for permission to connect with the sewer system of the Village was made on May 23, 1949, and that petitioner offered at that time to pay a substantial sum for the privilege or, in the alternative, that petitioner be granted the right to make a temporary connection until petitioner's rights could be determined by legal proceedings, but the Board of Trustees refused to accept any of the proposals made by petitioner.

The prayer of the petition was that a writ of mandamus be awarded petitioner directing the Village of Glen Ellyn to grant petitioner "the right to connect its buildings with the sanitary sewer system of the Village of Glen Ellyn upon such terms and conditions as the Board of Trustees of said Village shall deem just and proper for the efficient operation of the sewer

system, and to the end that petitioner shall pay its just share of the cost of maintenance of said sewer system.''

The issue to be determined upon this appeal is whether the Village can be compelled by writ of mandamus to permit the petitioner to connect the buildings being presently constructed on its land, which is now outside the corporate limits of the Village, with the sanitary sewer system of the Village because of the fact that the land which is now owned by petitioner was at one time within the corporate limits of the Village and which was assessed for benefits which it was legally determined it would receive from the construction of a sewer system and which assessment it paid under an ordinance providing for the construction of said sewer and which also provided that all land within the sanitary sewer district established by the ordinance would at all times thereafter be entitled to the use and benefit of the sewer with the right to connect thereto.

It is insisted by counsel for appellant that the Village cannot be compelled to permit the owner of property which is now located outside the corporate limits of the Village to connect with its sanitary sewer system; that the granting of such a permit to connect is a matter over which the Board of Trustees of the Village may exercise its discretion and having so exercised its discretion and having refused to grant the petitioner a permit to connect with the sewer system, the court has no power to substitute its judgment for that of the Board of Trustees. Counsel for appellee insist that since its property was once within the corporate limits of the Village and was included within the territory comprising the sanitary sewer district when the project was authorized, and having been assessed for benefits which the court having jurisdiction of the matter found that it would receive from the project and having paid that assessment, it is now entitled to connect with the

sewer system even though its property was thereafter and now is disconnected from the Village.

In *Title Guarantee & Trust Co. v. City of Chicago,* 162 Ill. 505, it appeared that a levy of a special assessment for the construction of a sewer had been made against a tract of land but that no provision had been made in the ordinance which provided for the project for connecting lands and lots not abutting upon the main sewer line and there had been no legislation so that it was not known whether any such lands would ever be permitted to drain into the sewer. It appeared that no benefit would be derived from said project unless the right to drain into it through laterals, or otherwise, could be secured. In sustaining the objection to the levy, the court said: (p. 507) "As there could be no surface drainage, the property not abutting upon the sewer could not be in any way benefited, unless, in the course of time, laterals should be built. It is true that property may be benefited which is not directly reached by a sewer, provided the ordinance is of such a character as to bring an outlet for sewerage nearer to the property, with some provision permitting the property to use such outlet in the future. But no assessment can be valid, based upon a prospect of a future connection with a sewer, unless a drainage district is created which will drain into it or some provision is made which will eventually effect such connection. The privilege of using the sewer in such cases depends upon the will of a body not within the control of the property owners, which may be expressed against the privilege. This ordinance designated no territory to be drained, and made no provision necessary to effect drainage from the land for which this objection was made. Whether such property would ever be connected with the sewer rested in the discretion of the city council, which had not been exercised, and which might be exercised either one way or the other."

██ In the instant case, appellant, in passing the ordinance providing for the sanitary sewer district, included therein, as a part of said ordinance, the provision that all of the land within the district should at all times thereafter be entitled to the use and benefit of the sewer improvement, together with the right to connect with the sewer, and thereby exercised its discretion in favor of the right of the owner of property to connect with the sewer and the property of appellee having been assessed upon the basis of such benefit and right, the Board of Trustees of the Village is without authority to withdraw or suspend the right which it has heretofore granted. The property of appellee, in the first instance, could only have been assessed upon the finding that it would receive a present benefit from the improvement, or that it would have an assured future enjoyment of benefit to be derived from it. (*City of Lawrenceville v. Hennessey,* 244 Ill. 464; *Mason v. City of Chicago,* 178 Ill. 499.) The ordinance therefore created an obligation, binding upon appellant to permit the connection, and binding upon the appellee to pay the assessment made against its property.

In *Mason v. City of Chicago,* 178 Ill. 499, it was insisted that the city had no right to levy a special assessment against property included in a designated drainage district but not directly abutting on the sewer line. It was held, however, that the city did have the right to levy such an assessment provided the right to receive the benefits was in some way assured or secured. In the course of its opinion, the court said: (p. 501) "Property not on the line of a main sewer may be benefited by bringing an outlet for sewerage nearer to the property; but we held in the case of *Title Guarantee & Trust Co. v. City of Chicago,* 162 Ill. 505, that in order to assess such property, a district must be designated which will have a right to drain into the sewer, or some provision must be made which will give the property the benefit of such sewer. That is all that

571

appears to have been done here. Certain territory was designated as a district for the purpose of this system of sewers, so that property not contiguous to the main sewer might be assessed and the owners assured that it would be an outlet for sewerage from their property.''

██ In the instant case, the provisions of section two of the ordinance expressly granted to the owners of the lands lying within the then described district the uses of the improvements, and appellant should not now be permitted to withdraw the privilege granted appellee to open and connect its sanitary sewers into the sewers of appellant. To be permitted to do so was the very foundation of the right of appellant to levy the special assessment against the property now owned by appellee. The fact that petitioner's land is now outside the corporate limits of the Village does not warrant the abrogation of the right previously conferred by ordinance and relied upon by the then owners of appellee's lands when the assessment levied against the property was paid. The language of the court in *City of Lawrenceville v. Hennessey,* 244 Ill. 464, 469, is pertinent here. It was there said: ''Special assessments are based solely upon and justified by benefits to property, and property cannot be assessed for a sewer unless it is benefited by a present use of the sewer or by an assured future use of such a nature that the owner can enforce his right and thereby secure the benefits.''

██ Counsel have not cited nor have we found any authority directly in point. It is well-settled that before a court will direct a writ of mandamus to issue, petitioner must show a clear right thereto. (*People ex rel. Illinois Highway Transp. Co. v. Biggs,* 402 Ill. 401, 408; *People v. Dixon,* 346 Ill. 454; *People v. Allman,* 382 Ill. 156.) And it is equally well-settled that where discretion is involved on the part of an administrative body, mandamus will not lie to direct how such

discretion shall be exercised. (*People v. City of Chicago,* 234 Ill. 416.) In the instant case, although an action at law, it would be highly inequitable and most unfair to sustain appellant in its determined refusal to permit appellee to enjoy the benefits, the consideration for which appellee has paid and appellant has received.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*