Tommy Durham, Relator-Appellant, *v.* Edward J. Barrett, Respondent-Appellee.

(No. 58615; ▮▮▮▮▮▮▮▮▮▮)

First District (4th Division)—November 14, 1973.

Steven Franklin Schwab and Howard Rubin, of Downs, Zeitlin, Haddix and Schwab, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and John A. Dienner, III, Assistant State's Attorneys, of counsel), for appellee.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

On March 21, 1972, pursuant to statute, ward committeemen were elected in the City of Chicago. No candidates appeared on the ballot for the post of Democratic Committeeman in the 29th Ward, and the contest was conducted by "write-in" ballot. The official canvass in this contest showed Bernard Neistein receiving 1713 votes, the relator, Tommy Durham, receiving 50 votes, and other various individuals receiving one vote apiece. Subsequent to the election an action was filed asking the court to enter an order disqualifying Neistein because he was not a resident of the 29th Ward as required by statute, and such an order was entered declaring Neistein ineligible to serve. It is unclear from the record whether Neistein ever sought to run in the election at all.

The relator-appellant, Tommy Durham, then filed this action for a writ of mandamus to compel the respondent, Edward Barrett, then County Clerk, to certify him, Durham, the first runner-up in the election, as the duly elected Democratic Ward Committeeman for the 29th Ward in the City of Chicago. The trial court denied the petition and dismissed the case and this appeal was taken.

The relator contends that it is the statutory duty of the County Clerk to issue a certificate of election to him since he received the highest vote total of any eligible candidate. He asserts that this duty is non-discretionary and purely administrative and that the clerk's refusal is without legal justification.

· The Election Laws of the State of Illinois provide in pertinent part in Ill. Rev. Stat. 1971, ch. 46, par. 7—8(b) that:

"Each candidate for ward committeeman must be a resident of and in the ward where he seeks to be elected ward committeeman.

The one having the highest number of votes shall be such ward committeeman of such party for such ward."

Par. 7—58 of the same chapter provides in part that:

"[T]he county clerk shall issue a certificate of election to each person shown by the returns to be elected precinct, township or ward committeeman."

There is no dispute that Neistein received an overwhelming plurality of the write-in votes and appeared to be the winner of the election. Nor is it disputed that subsequent to the election he was declared disqualified because he was not a resident of the ward. Relator Durham argues that under the above quoted statutes he should be declared elected because, since Neistein was subsequently declared ineligible, the relator was really the winner of the election.

■■ But under par. 7—58 the County Clerk is authorized to issue a certificate of election to each person *shown by the returns* to be elected. The returns showed that Neistein won and that Durham came in a distant second. We hold that under this section of the Election Code the county clerk does not have a duty to certify first runners-up in the event the winner is later disqualified. He only has the right to select as "shown by the returns."

■■ Relator asserts that Neistein was never actually a candidate for the office of Ward Committeeman of the 29th Ward, and that therefore his votes should be disregarded and that relator is the eligible winner. But in point of fact it was impossible to determine prior to the election whether anyone was a proper candidate or resided in the ward since there were no official candidates. No names appeared on the ballot and none of the contestants, including the relator, filed certificates of candidacy. The relator would have the County Clerk certify him on the basis of 50 write-in votes as the elected Ward Committeeman when in fact he was not the numerical winner. There is no such duty on the part of the clerk to make such a certification and therefore the mandamus will not lie and the court properly dismissed the action.

In addition to our interpretation of the duty of the County Clerk as contained in par. 7—58, the legislature's intent in regard to the situation presented seems clear. Section 23—29 of the Illinois Election Code, entitled "Disqualification of person receiving highest number of votes" (Ill. Rev. Stat. 1971, ch. 46, par. 23—29), unequivocally provides:

"When the person whose election is contested is found to have received the highest number of legal votes, but the election is declared null by reason of legal disqualification on his part, or for other causes, the person receiving the next highest number of votes

shall not be declared elected, but the election shall be declared void."

It is clear that relator has no statutory right to be named 29th Ward Democratic Committeeman based on the returns from the March 21, 1972 election.

The relator next contends that where the electorate has knowledge that the person they are casting their vote for is ineligible they are bound by the person elected by a plurality of votes susceptible of being counted.

As indicated earlier, there were no official names of candidates on the ballot nor certificates of candidacy filed by the write-in candidates for voters to examine. Relator argues that those who voted for Neistein must have had sufficient personal knowledge of him to know that he was not a resident of the ward, especially since it is claimed that Neistein never indicated to the electorate that he was a candidate. Relator further argues that there were numerous news stories in the daily papers of general circulation in the Chicago area disclosing the fact that Neistein was not a resident of the 29th Ward. It is thus asserted that it was generally known throughout the district, and particularly among those acquainted enough with him to write-in his name on the ballot, that he was not a resident and thus ineligible for the position of ward committeeman. Relator therefore argues that those who would persist in voting for a candidate they know is ineligible have wasted their votes and should be bound by the election of the eligible candidate with the highest vote total.

■■ We have examined the record on this issue and do not find any evidence to support the conclusion that the electorate knew or should have known that Neistein was not a resident of their ward. It is merely an assumption by the relator of implied knowledge by the voters.

The cases cited by relator on this point do not compel a reversal of the trial court's decision. In *Madden v. Board of Election Commissioners of City of Boston*, 251 Mass. 95, 146 N.E. 280, a candidate died the day before the election was held. The evidence clearly showed that this fact appeared prominently in all the daily papers, a specimen of one attached to the record containing a "headline announcement covering six of the eight columns of the first page of the newspaper and * * * an obituary [filling] more than one-fourth of a column of the first page, running onto a later page." (251 Mass. at 96, 146 N.E. at 281.) But in addition, two persons stationed near each of the eleven polling places on election day were instructed to inform each voter that the candidate had died, and would testify that they did so. Based upon that record, the court held that the voters had specific and actual notice of his death and had chosen to, in effect, waste their votes by casting them for him, and a

runner-up was declared elected. Nothing even approaching such compelling evidence was presented in the instant case regarding the voter's knowledge of Neistein's ineligibility.

■■ As for *People ex rel. Furman v. Clute,* 50 N.Y. 451, 10 Am. Rep. 508, also cited by relator, both the holding and the court's discussion of the law therein in actuality belie the relator's position. The court in that case held that the first runner-up in the election should not be deemed elected since there was no proof of actual notice to the electorate of the winter's ineligibility. Although the case is old, the court offered therein what we feel is still a proper statement of the law— and one which defeats the relator's claim here.

> "We think the rule is this: the existence of the fact which disqualifies, and of the law which makes that fact operate to disqualify, must be brought home so closely and so clearly to the knowledge or notice of the elector, as that to give his vote therewith indicates an intent to waste it." 50 N.Y. at 466, 10 Am. Rep. at 515.

No proof was offered in the Circuit Court to support the notion that both the fact of Neistein's non-residency and his resulting ineligibility were "brought home so closely and so clearly" to the voters' knowledge or notice that they can be said to have intended to waste their votes.

■■ This being a mandamus action, the relator has the primary duty to show that an unequivocal and enforceable duty exists as to the respondent and that the relator has a clear right to the relief which he seeks. At best it is doubtful as to whether the respondent has the right to certify anyone other than the person with the highest numerical vote count. The writ of mandamus is an extraordinary legal remedy and is used to coerce action when it is clearly shown that the law imposes a duty upon the respondent to act in the particular manner requested. (*L.E. Myers Co. v. Sanitary District of Chicago,* 386 Ill. 542, 54 N.E.2d 505). We are satisfied that the respondent was without power or duty to certify the relator as the duly elected Democratic Ward Committeeman of the 29th Ward.

For the reasons stated the denial of a writ of mandamus and subsequent dismissal of this action by the trial court is affirmed.

Affirmed.

ADESKO and DIERINGER, JJ., concur.