WOODFIELD LANES, INC., Plaintiff-Appellee, v. THE VILLAGE OF SCHAUMBURG *et al.*, Defendants-Appellants.

First District (3rd Division) No. 87—0190

Opinion filed March 30, 1988.—Rehearing denied April 21, 1988.

Jack M. Siegel, of Chicago, for appellant.

Feiwell, Galper & Lasky, Ltd., of Chicago (William J. Kralovec and William H. Hrabak, Jr., of counsel), for appellee.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiff Woodfield Lanes, Inc., filed this action against defendant Village of Schaumburg (Village) and three other defendants, suing to recover on a contract implied in law in count I and seeking recovery for constructive fraud and breach of fiduciary duty in counts II and IV. Counts III and V of the complaint are not directed against the Village. The Village appeals from an order granting plaintiff's motion for summary judgment on count I and awarding plaintiff $69,197.14 plus interest. Plaintiff cross-appeals from the order granting defendant's motion for summary judgment on counts II and IV.

In its answers to plaintiff's complaint and motion for summary judgment, the Village admitted the following facts. In 1979 plaintiff sought to build a bowling alley on its property in Schaumburg. Plaintiff constructed a sewer and water main in Golf Road, connecting its property with the Village's sewer and water lines, in a manner that readily allowed connections for four other parcels of property with frontage on Golf Road. In 1981 the Village enacted an ordinance which allowed plaintiff to recover part of its costs for construction of the sewer and water main.

The ordinance provides in its preamble:

"[T]he Village has approved and accepted [the] sewer and water line [constructed by plaintiff] ***; and *** the property directly benefited from said sanitary [sewer] and watermain is legally described as Exhibit B *** ('Parcel 1, Parcel 2, Parcel 3, and Parcel 4'); and *** the Village has determined that the owners of any properties benefiting from said improvement desiring to make use thereof shall pay the proportionate share of the cost of said improvement ***." (Village of Schaumburg, Ill., Ordinance No. 2021 (July 21, 1981).)

Exhibit B consists of the legal descriptions of the four parcels with frontage on Golf Road.

In the body of the ordinance, section 1 states:

"The cost of connecting to the sewer line and watermain hereinabove described for any of the area benefited as set forth in Exhibit B shall be as follows:
* * *
Parcel 4 [$]69,197.14
*** Said payment shall be made upon the connection requested by the owners of the property benefited by said agreement." (Village of Schaumburg, Ill., Ordinance No. 2021 (July 21, 1981).)

Section 2 provides:

> "No person, firm or corporation being the owner of *** the above described benefited properties, shall connect to *** said sanitary sewer and watermain without first having obtained a permit from the Village of Schaumburg to make such connection. No such permit shall be issued unless the applicant shall first pay to the Village *** the amount *** set forth in Section One hereof. *** When any building hereafter is erected on the property hereinabove described as benefited, the Village will require the owner of such property to connect to said sewer line ***. No building permit shall be issued for any building on said property unless the plans provide for such connection, and no occupancy permit for such building shall be issued until such connection shall have been made and until the connection fees hereinabove provided shall have been paid." (Village of Schaumburg, Ill., Ordinance No. 2021 (July 21, 1981).)

Section 3 provides that all monies collected by the Village pursuant to this ordinance shall be paid over to plaintiff or its successors or assigns.

The owners of parcels 1, 2 and 3 developed their properties and paid the Village the amounts mandated by the ordinance. The Village paid those amounts to plaintiff. Parcel 4 fronted on both Golf Road and Plum Grove Road. The owner sought to develop his property, but he preferred to connect his sewer and water lines to Village lines under Plum Grove Road rather than Golf Road. On February 14, 1984, the Village approved the owner's plan and issued building permits for the property. The Village did not require the owner to pay any part of plaintiff's costs for sewer construction.

 █ On appeal, the Village argues that plaintiff has not established grounds for the court to imply a contract at law. The essence of a cause of action for a contract implied in law, or a quasi-contract, is the defendant's failure to make equitable payment for a benefit which it voluntarily accepted from the plaintiff. (*Elliot v. Villa Park Trust & Savings Bank* (1978), 63 Ill. App. 3d 714, 717, 380 N.E.2d 507.) The action "is predicated on the fundamental principle that no one should unjustly enrich himself at another's expense." (*First National Bank v. Glenn* (1971), 132 Ill. App. 2d 322, 324, 270 N.E.2d 493.) The Village accepted the sewer and water main as improvements and assumed ownership of the sewer when it enacted the ordinance. The improvements facilitated development of property in the Village, thereby increasing the Village's tax base. We agree with the trial court's conclusion that the Village received a benefit when plain-

tiff constructed the sewer.

Furthermore, the ordinance shows that the Village regarded the sewer as a benefit deserving compensation once the properties had been developed. The ordinance clearly requires the Village to collect fees "[w]hen any building *** is erected" on any of the four parcels. The requirement is reiterated: "No building permit shall be issued for any building on said property unless the plans provide for such connection ***." (Village of Schaumburg, Ill., Ordinance No. 2021 (July 21, 1981).) The Village contends that the parcels are not "benefited" within the meaning of the ordinance unless the owners seek connection to the sewer line in Golf Road, and since the owner of parcel 4 chose to connect to the sewer line in Plum Grove Road, his property was not benefited. But this construction of the ordinance renders meaningless the provision that no building permit for the benefited properties shall issue unless the plans provide for connection to the sewer line in Golf Road. We will not construe an ordinance in a manner that renders its provisions meaningless. (*People v. Tarlton* (1982), 91 Ill. 2d 1, 5, 434 N.E.2d 1110.) Moreover, section 1 of the ordinance refers to the "area benefited as set forth in Exhibit B," without qualification (Village of Schaumburg, Ill., Ordinance No. 2021 (July 8, 1981)); Exhibit B simply lists the legal descriptions of the four parcels. Thus, the ordinance defines the four parcels as "benefited" without regard to whether the owners chose to connect to the sewer which plaintiff installed.

■ The Village maintains that the preamble to the ordinance establishes that the owners of the benefited properties will not be liable for construction costs for the sewer unless they "desir[e] to make use thereof." (Village of Schaumburg, Ill., Ordinance No. 2021 (July 8, 1981).) We interpret the preamble to mean that the owners of the benefited parcels need not develop their properties, and if they do not develop, they are not liable for the amounts stated in the ordinance. Thus, the preamble is not inconsistent with the body of the ordinance. Moreover, we will not use the preamble to find an ambiguity in an otherwise unambiguous ordinance, since the preamble "is no part of the Act." (*Brown v. Kirk* (1976), 64 Ill. 2d 144, 152, 355 N.E.2d 12.) We find that the recapture ordinance unambiguously states on its face that the Village must collect the stated fee from the owners of the four parcels and turn the money over to plaintiff, whenever the owners of those four parcels choose to develop their properties. Therefore, the Village failed to enforce its ordinance when it allowed the owners of parcel 4 to develop the property without paying the amount stated in the ordinance. The Village enriched itself when it knowingly

and voluntarily accepted plaintiff's services in constructing the sewer and water main; the Village rendered that enrichment unjust when it failed to fulfill its duty to enforce its ordinance in order to provide compensation for plaintiff.

■ The Village argues that it cannot be liable for accepting the benefit that plaintiff bestowed on it because it did not request the benefit. However, a party may be liable in quasi-contract even if it did not request the benefit received. (*In re Estate of Milborn* (1984), 122 Ill. App. 3d 688, 691, 461 N.E.2d 1075.) Here the Village had a duty to enforce its ordinance, and its voluntary acceptance of the benefit from plaintiff together with its failure meet its duty constitutes unjust enrichment, even in the absence of a prior request for plaintiff's work.

■ The Village claims that there cannot be an implied contract based on the ordinance, arguing that the ordinance is an express contract if it is any contract at all. Both parties admit that the ordinance is not a contract, and plaintiff cannot bring suit for breach of the ordinance as an express contract. Nonetheless, the ordinance establishes the Village's legal duty to collect sums from the owners of the benefited properties, and the failure of the Village to meet this legal duty renders its enrichment unjust. The ordinance cannot bar plaintiff's suit for unjust enrichment since the ordinance is not an express contract. *Cf. Decatur Production Credit Association v. Murphy* (1983), 119 Ill. App. 3d 277, 287-88, 456 N.E.2d 267.

The Village argues that it could not enforce the ordinance against the owner of parcel 4 since in 1979 the Village charged that owner a special assessment for the sewer and water main in Plum Grove Road. Payment of that assessment assured that the owner of parcel 4 had the right to connect his building to the sewer and water main in Plum Grove Road. (*Catholic Foreign Mission Society of America, Inc. v. Village of Glen Ellyn* (1950), 339 Ill. App. 565, 571, 90 N.E.2d 653.) However, the special assessment against parcel 4 is irrelevant to the issues involved in the case at bar, which concerns only the Village's receipt of a benefit and the failure to provide just compensation for that benefit.

■ The Village maintains that it is immune under the common law and under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (Ill. Rev. Stat. 1983, ch. 85, pars. 1—101 *et seq.*). The Village cites *Wacker-Wabash Corp. v. City of Chicago* (1953), 350 Ill. App. 343, 354, 112 N.E.2d 903, for the proposition that a municipality may not be held liable on an implied contract. However, that case involved a contract implied in fact: plain-

tiff therein alleged that the city's agents promised to complete certain improvements in return for plaintiff's agreement to develop its property in accord with the city's plans. The court held that the city could not be bound by its officers' promises when the officers did not follow the forms prescribing the manner in which the city can make contracts. (350 Ill. App. at 357.) A contract implied in law, on the other hand, "does not arise from an intent to contract or a promise." (*First National Bank*, 132 Ill. App. 2d at 324.) The failure to follow proper contractual forms is therefore immaterial. Illinois courts have held municipalities and other governmental units liable on contracts implied in law despite the absence of proper contractual forms. (*Great Lakes Dredge & Dock Co. v. City of Chicago* (1933), 353 Ill. 614, 627, 188 N.E. 196; *Town of Montebello v. Lehr* (1974), 17 Ill. App. 3d 1017, 1021-22, 309 N.E.2d 231; *Welsbach Traffic Signal Co. v. City of Chicago* (1946), 328 Ill. App. 467, 480, 66 N.E.2d 471.) Moreover, contracts were implied in law in these cases despite the absence of prior appropriations, which is fatal to claims based on express contracts or contracts implied in fact. (*Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 857-58, 433 N.E.2d 726.) We conclude that the Village has no common law immunity from plaintiff's suit in quasi-contract.

▉ Finally, the Village maintains that the money judgment is barred by the Tort Immunity Act. Sections 2—103 and 2—104 of the Act state:

"A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." (Ill. Rev. Stat. 1983, ch. 85, par. 2—103.)

"A local public entity is not liable for an injury caused by the issuance *** or by the failure or refusal to issue *** any permit ***." (Ill. Rev. Stat. 1983, ch. 85, par. 2—104.)

However, the Act also clearly limits its own application:

"Nothing in this act affects the liability, if any, of a local public entity or public employee, based on:

(a) Contract ***." (Ill. Rev. Stat. 1983, ch. 85, par. 2—101.)

Therefore, if a quasi-contract, or a contract implied in law, is a "contract" within the meaning of the Tort Immunity Act, the Act does not protect the Village from liability.

Our supreme court abolished common law governmental tort immunities in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 25, 163 N.E.2d 89, *cert. denied* (1960), 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955, and the legislature in response enacted the Tort Immunity Act. (*Arnolt v. City of Highland Park*

(1972), 52 Ill. 2d 27, 30-31, 282 N.E.2d 144.) Since the Act stood in derogation of the common law at the time of its enactment, it must be strictly construed against the governmental bodies seeking immunity. (*Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 342, 270 N.E.2d 415; *Williams v. Board of Education of Clinton Community Unit School District No. 15* (1977), 52 Ill. App. 3d 328, 336, 367 N.E.2d 549.) Under common law governmental tort immunity prior to *Molitor*, municipalities were liable for breach of contracts implied in law. (*Welsbach*, 328 Ill. App. at 480.) The legislature did not indicate that it intended to extend immunities beyond their reach prior to *Molitor*. Also, the legislature did not in any way limit the term "contract" in the Act. The statutory phrase "unwritten contracts, expressed or implied" has been found broad enough to include contracts implied in law. (Ill. Rev. Stat. 1985, ch. 110, par. 13—205; *P-K Tool & Manufacturing Co. v. General Electric Co.* (N.D. Ill. 1985), 612 F. Supp. 276, 278; *Woods v. Village of La Grange Park* (1939), 298 Ill. App. 595, 617-18, 19 N.E.2d 396.) A court will find a contract implied by law without regard to agreements or promises between the parties when the contract must be imposed upon the parties in order to avoid an inequitable result. (*Telander v. Posejpal* (1981), 94 Ill. App. 3d 616, 620, 418 N.E.2d 444.) We do not believe that the legislature meant to grant governmental bodies immunity from suit based on contract where equity demands that the court impose a contract. Therefore we hold that the Tort Immunity Act does not bar plaintiff's action based on a contract implied by law.

In sum, we agree with the trial court's finding that the facts admitted by the Village present sufficient grounds for imposing a contract implied in law, and since the Village has no immunity from suit on a theory of implied contract, we affirm the trial court's decision to grant plaintiff's motion for summary judgment on count I of the complaint.

On the cross-appeal, plaintiff stated that it would not seek a double recovery, and it admitted that the recovery on count I is all of the recovery that it is entitled to receive from the Village. Thus, we affirm the trial court's decision to grant the Village summary judgment on counts II and IV of the complaint.

Affirmed.

RIZZI and FREEMAN, JJ., concur.