(No. 21382.—

THE PEOPLE *ex rel.* George F. Koester, Jr., Appellee, *vs.* THE BOARD OF REVIEW OF COOK COUNTY *et al.* Appellants.

*Opinion filed December 23, 1932—Rehearing denied Feb. 8, 1933.*

Stone and Jones, JJ., dissenting.

Roy Massena, (Hayden N. Bell, and Weymouth Kirkland, of counsel,) for appellants.

Watkins, TenHoor & Gilbert, for appellee.

Mr. Chief Justice Heard delivered the opinion of the court:

A petition was filed in the superior court of Cook county by the People of the State of Illinois, on relation of George F. Koester, Jr. The petition made as party defendants the board of review and Charles V. Barrett, Edward R. Litsinger and Edward J. Hughes as members thereof, and Robert M. Sweitzer as county clerk of Cook county. The original petition was filed on November 6, 1931, to which the board of review and the members thereof filed a demurrer. Thereafter, by leave of court, an amended petition was filed, and later a second. This latter amendment for convenience is hereinafter referred to and treated as the petition. The second petition was on January 6, 1932, dismissed as to Robert M. Sweitzer, county clerk of Cook county. General and special demurrers were filed to the petition by the board and its members. On January 11, 1932, the death of Charles V. Barrett, one of the members of the board, on December 31, 1931, was suggested. The court overruled the general and special demurrers of the board and its members. The board and its members elected

to stand by the general and special demurrers and the court ordered a writ of *mandamus* to issue. From this order directing a writ of *mandamus* to issue the board of review and its members have appealed to this court.

By an act of the legislature at its first 1932 special session, in force February 13, 1932, the Revenue act was amended and section 32a was added, whereby, in counties containing two hundred fifty thousand or more inhabitants, a board of appeals, consisting of two members, was created and established, and it was provided: "In counties containing two hundred fifty thousand or more inhabitants a board of appeals consisting of two members is hereby created and established. * * * Such board of appeals shall be the successor of the board of review in such counties containing two hundred fifty thousand or more inhabitants and immediately upon the appointment and qualification of the first members of such board of appeals, as hereinbefore provided the board of review in such counties shall deliver up to the county assessor all the books, papers, maps, plats, lists and other records of their office and thereupon such board of review shall be abolished and cease to exist."

While this appeal was here pending, on June 22, 1932, a motion of appellants Edward R. Litsinger and Edward J. Hughes to dismiss the appeal was denied, and it appearing to the court that the board of appeals had succeeded the board of review, the board of appeals was substituted as party appellant.

The petition consisted of twenty-three paragraphs, and as appellants' special demurrer was directed specifically to particular paragraphs of the bill, it will be necessary in this opinion to set them out somewhat *in extenso*.

Paragraph 1 recites that the relator is a tax-payer of Cook county and is the owner of various parcels of real estate, upon one of which the assessed value for the year 1929 was $96,995, and the taxes thereon for that year were $5693.61.

Paragraphs 2, 3, 4 and 5 pertain to the organization of the board, its practices and duties.

Paragraph 6 alleges that there were enormous sums of personal property not exempt from taxation in Cook county for the year 1930 which had either been wholly omitted from taxation or grossly under-assessed by the board of review; that on October 5, 1931, the board of review was notified of such omissions and under-assessments by a written notice signed by the relator, which notice set forth that the board of assessors of Cook county had publicly announced that there was $172,270,000 of personal property, consisting of boats, aeroplanes, refrigerator cars, board of trade and stock exchange seats, and fire, marine and inland transportation insurance, which had not been assessed; that if these mentioned items were put on the assessment books the taxes would be incrcased by $3,824,394; that said items were but a small part of the omitted property subject to assessment; that there were bank deposits and trust estates in banks which had not been assessed, the assessed valuation of which would be $139,420,460; that the assessed value of estates in the probate court amounted to $42,790,500; that under the statutes and in accordance with the oath of the members of the board of review it was their duty to assess all property subject to assessment; that the board of review for the year 1930 had reduced the assessment of banks and trust companies by over $47,000,-000; that the demand formally called the attention of the board of review to the facts set forth and advised the members of the board of review as to their oaths of office, their bonds and other obligations; that the excuse for failure to put such omitted property on the tax books was not due to inadvertence or lack of knowledge because attention had been called to the omissions through the public press; that if the board of review adjourned without placing enormous amounts of personal property upon the assessment books the validity and collection of the 1930 tax would be en-

dangered; that the failure of the taxing bodies to place available personal property on the assessment rolls of Cook county would vitiate and make illegal the 1930 assessment roll; that the real estate tax-payers of Cook county were asking for a uniform and equitable tax as provided by law; that if the personal property mentioned in the demand, and other assessable personal property, were not placed upon the 1930 assessment books, there would be no alternative for the tax-payers but to take adequate steps to remedy the wrong and institute proper legal action against those bodies responsible for the situation.

Paragraph 7 alleged that all of the assessment books for taxes for the year 1930 have been delivered by the board of assessors to the board of review; that the board of review has held hearings thereon and turned over all of the books to Robert M. Sweitzer, county clerk of Cook county, for the purpose of making the rate and extending the tax; that the assessment books contained fraudulent and illegal assessments of property in Cook county for the year 1930, and that vast amounts of taxable personal property as set forth in the petition have been deliberately and intentionally omitted or under-assessed for the year 1930.

Paragraph 8 alleged that on April 1, 1930, there were in trust in seventy State banks authorized to conduct a trust business in Chicago, estates of residents of Cook county consisting of taxable personal property, the value of which for the year 1930, after deducting therefrom all real estate and property exempt from taxation, was over $4,000,000,000; that in addition thereto there were sixteen National banks in Cook county authorized to transact a trust business on April 1, 1930; that in the National banks there were estates of taxable personal property of residents of Cook county in trust subject to assessment in Cook county for said year, after deducting all property exempt from taxation, in the amount of over $251,000,000. The petition then gave a list of banks and trust companies

in Cook county which had in their possession, in trust or in a fiduciary capacity, personal property of residents of Cook county after deducting all property exempt from taxation for the year 1930, and in connection with the list stated amounts held by the individual banks and trust companies, and that the board of review and its members assessed the personal property held by the banks and trust companies at less than two per cent of its fair cash value.

Paragraph 9 alleged that on April 1, 1930, there was on deposit by residents of Cook county in one hundred and sixty-seven State banks in said county, subject to assessment for taxes for the year 1930, the sum of $2,713,000,000, and in addition thereto collateral securities in the form of stocks, bonds and other evidences of indebtedness which, after deducting therefrom all tax-exempt property, amounted to more than $2,500,000,000; that in the National banks in Cook county there was on April 1, 1930, subject to assessment for that year, the sum of over $2,000,000,000, and that the board of review had failed and refused to levy any assessment upon said bank deposits or collateral securities.

Paragraph 10 alleged that on April 1, 1930, there were listed in the probate court of Cook county, estates of decedents and other estates of residents of Cook county subject to tax; that the values of said estates and their descriptions and the names of the owners were set out in full detail in the inventories and appraisements therein, which were available to the board of review in the county treasurer's office and in the inheritance tax department of the Attorney General's office; that said records show that the value of the estates as of April 1, 1930, was $1,927,500,-000, after deducting therefrom real estate and property exempt from taxation; that all of the estates were subject to assessment for taxes for the year 1930, and for at least two years prior thereto, at the rate of thirty-seven per cent of their fair cash value as of April 1 for the respective

years, and that said estates were either entirely omitted from assessment or assessed at less than two per cent of their fair cash value for the years 1928, 1929 and 1930.

Paragraph 11 gives as examples a list of decedents' estates that were deliberately omitted or under-assessed for the year 1930 or at least for two years previous thereto, and alleges that all of the listed estates were assessable for taxes for the years 1928, 1929 and 1930, and that the valuations set forth in the petition do not include any real estate or tax-exempt property in said estates. The list shows the values appraised by the probate court, together with the assessment by the board of review for the year 1930.

Paragraph 12 alleged that on April 1, 1930, there were in Cook county, subject to taxation, aeroplanes, boats, yachts and water-craft owned by residents of Cook county of a fair cash value in excess of $20,000,000, none of which were assessed for the year 1930, although their descriptions, owners' addresses and costs relative thereto were available in public records and known by the board of review.

Paragraph 13 alleged that on April 1, 1930, there were in Cook county, and subject to taxation, more than 500,000 automobiles and motor vehicles owned by residents of Cook county, of a fair cash value of more than $120,000,000; that less than 20,000 of said automobiles were assessed by the board of review for said year, and that the names, descriptions and data relative to the automobiles were easily available to the board of review from the printed public records of the Secretary of State of Illinois.

Paragraph 14 alleged that the board of assessors of Cook county for the year 1931 had assessed railroad equipment, in the form of refrigerator and other cars, of the value of $84,000,000; that the refrigerator and other railroad cars were of like value and owned by residents and corporations doing business in Cook county and subject to assessment for the year 1930; that the descriptions and location of said property were known by and available to

the board of review but that the property was not assessed by the board of review for the year 1930.

Paragraph 15 of the petition alleges that on April 1, 1930, there were 800 memberships in the Chicago Board of Trade, of a valuation of $12,000 each, owned by residents of Cook county and subject to assessment, the total valuation of said memberships in the Board of Trade being $9,600,000. An itemized list of the memberships in the Board of Trade showing the names of the owners, their addresses and the valuation of $12,000 per membership, is listed. The petition further lists 312 memberships in the Chicago Stock Exchange, of a valuation of $31,000 each, making a total valuation of $9,920,000, and a list of the alleged owners of the memberships in the Chicago Stock Exchange, the addresses thereof, the number of memberships and the value as of April 1, 1930, are then given; that the market value of each of the foregoing memberships in the Chicago Board of Trade and the Chicago Stock Exchange as of April 1, 1930, was $12,000 and $31,000, respectively; that the memberships were on said date investments in the nature of personal property and entitled the owners thereof to aliquot interests in the physical and intangible properties and assets of the respective bodies and to the right to use the facilities and privileges of said bodies and the services of employees thereof and to sell or transfer the memberships at existing market values.

Paragraph 16 alleged that on April 1, 1930, the trust companies in Cook county, acting as trustees or in other fiduciary capacities for owners of mortgage or trust deeds of residents of Cook county, represent billions of dollars in taxable wealth, which information was easily obtainable from the office of the county recorder of Cook county, and that the board of review had failed and had made no attempt to discover, list and assess said property and has omitted all of said property from the assessment for the year 1930.

Paragraph 17 alleged that on April 1, 1930, there were in the various warehouses, mercantile, manufacturing, industrial and public utility establishments and holding and security companies or corporations in Cook county billions of dollars in merchandise or other taxable personal property of residents of Cook county which the board of review, with knowledge thereof, deliberately either omitted from the assessment for the year 1930 or assessed the same at less than one per cent of the fair cash value thereof.

Paragraph 18 alleged that companies and corporations doing business in Cook county as listed had owned and had in their possession in said county on April 1, 1930, personal property in the nature of chattels, goods, wares, merchandise and other taxable personal property of the value shown in the petition, which personal property was either entirely omitted from the 1930 assessment or under-assessed by the board of review. The petition lists the names of companies and corporations and shows the alleged value of the taxable personal property, thirty-seven per cent of such alleged value, the amount of the 1930 assessment and the under-valuation, and shows the total alleged amount of personal property which was omitted or under-assessed as to the corporations mentioned in said paragraph, together with the alleged amount of taxes lost to Cook county.

Paragraph 19 alleged that the board of review, board of assessors and county treasurer of Cook county have maintained that the only remedy of the tax-payer was in *mandamus* to require the boards to list omitted personal property and to raise the assessment of under-assessed property.

Paragraph 20 alleged that the action of the board of review in failing to assess and in grossly under-assessing the enormous amounts of personal property set forth in the petition for the year 1930 would impose a tax burden upon the real estate of the relator and other owners of real property in Cook county; that the tax burden laid on the

real estate was not uniform and in proportion to the property of the relator and of others, as required by the constitution and the laws of the State of Illinois; that unless the relief prayed for in the petition be granted, the county collector would proceed to collect a discriminatory and fraudulently excessive tax from the real estate of the relator and of others; that the action of the board of review was illegal and fraudulent, was a denial of the equal protection of the law, and constituted a taking of the property of the relator and of other owners of real estate in Cook county without due process of law, in contravention of the fourteenth amendment to the constitution of the United States.

Paragraph 21 alleged that Robert M. Sweitzer, as county clerk of Cook county, has in his possession, custody and control the books, records and documents relating to the 1930 assessment of property of the relator and of other real estate tax-payers in said county, and that it might be necessary for the court to command Sweitzer to return the books, records and documents to the board of review in order to effectuate the order and writ of *mandamus* if granted as prayed in the petition.

Paragraph 22 alleged all the property set out in the petition as under-assessed or omitted from taxation by the board of review was personal property located in Cook county subject to assessment by the board of review and taxable under the laws of the State of Illinois in Cook county; that none of said property includes any property exempt from taxation under the terms of section 2 of the Revenue act, and that said property does not include any bonds, securities or other obligations of the United States or other form of property which is by the Federal constitution or the acts of Congress made exempt from taxation.

Paragraph 23 asks that a writ of *mandamus* directed to the board of review of Cook county and the members thereof be issued by the court, commanding them and each

of them to obtain and recover possession of such records, documents and assessment books relative to the assessment of property in Cook county for the year 1930 as they have permitted to be removed from their custody and control, and to retain said records, documents and assessment books until each and every of the orders and requirements of the court in this proceeding are conformed to and completed; that the board of review be commanded to proceed in the regular statutory method to assess as omitted or under-assessed property such portion of the properties set forth in the petition as might be found upon investigation to have been omitted or assessed for the year 1930 at less than thirty-seven per cent of the fair cash value of the property described in the petition as of April 1, 1930.

The special demurrer sets forth that with reference to all of paragraphs 8 to 18, inclusive, in the petition for *mandamus,* it is not made to appear affirmatively that it is the clear duty of the respondents to do the acts demanded in the petition, and that the relator therein has not set forth every material fact necessary to show that it is the plain duty of the respondents to do the acts demanded.

With reference to paragraph 8 of the amended petition as amended, dealing with property alleged to be held in the State and National banks in the city of Chicago, and with reference to paragraph 9 of the petition, relating to alleged collateral securities in the form of stocks, bonds and other evidences of indebtedness, the demurrer points out that there is no description of the property given nor the name or names of the owners of the property disclosed, nor is the amount of property belonging to each of the owners set forth, nor is the nature and character of the property alleged to be held in State and National banks as collateral security set forth, nor are the residences of the owners of the property described in paragraphs 8 and 9 set forth, nor are any facts alleged showing that any of the property set

forth in paragraphs 8 and 9 was liable to assessment for the year 1930, nor that the taxation thereof had been omitted.

With reference to the estates set forth in paragraphs 10 and 11 of the petition the demurrer alleges there is given no description of the property making up said estates, nor are the nature and the character of the alleged property set forth, nor any allegation of facts showing that any of the property of the estates was liable to assessment for the year 1930, nor that the taxation thereof was omitted, nor any facts set forth to show that the alleged appraised probate court values did not include real estate or stocks in Illinois corporations which are not assessable by the board of review.

With respect to paragraph 12 of the petition the demurrer alleges that there was no description of the aeroplanes, boats, yachts or water-craft alleged to have been omitted from taxation, nor were the name or names of the owners of any of said articles given, nor the residences of any of the owners of said articles set forth nor their nature and character given.

With reference to the automobiles, trucks and motor coaches alleged in paragraph 13 to have been omitted from taxation for the year 1930 the demurrer alleges there was no description given thereof, nor the name or names of the owners of any of the vehicles, nor the residences of the owners of any of the same, nor was it shown who were the owners of the 20,000 of automobiles which had been assessed by the board of review for the year 1930, nor were the nature and character of any of the vehicles set forth.

With reference to paragraph 14 of the petition the demurrer sets forth that there were given no descriptions of the refrigerator or other railroad cars set forth in said paragraph, nor was there any description of the property, nor were the name or names of the owners disclosed, nor were any facts set forth with reference to the nature or character of such cars, nor were the residences of the owners of such cars given.

With reference to memberships in the Chicago Board of Trade and the Chicago Stock Exchange set forth in paragraph 15 of the petition, the demurrer alleges that the petition fails to show the nature or character of the Chicago Board of Trade or of the Chicago Stock Exchange or of the memberships therein, and that the petition fails to state facts from which it could be determined whether memberships therein were taxable property within the meaning of the constitution and Revenue act of the State of Illinois; that nowhere in the petition is there any allegation that the memberships were real or personal property; that memberships in the Chicago Board of Trade and the Chicago Stock Exchange are personal privileges not subject to taxation, and that the memberships are not real or personal property within the meaning or intendment of the Revenue law of the State of Illinois, and that the memberships can not lawfully be included in the 1930 assessment roll.

With reference to paragraph 16 of the petition the demurrer alleges that as to the trust companies acting as trustees for owners of mortgages and trust deeds which the petition alleges had been omitted from taxation for the year 1930, there is given no description of the property, nor the names of the owner or owners of the property, nor the nature and character of the property, nor the residences of the owners.

With reference to paragraph 17 of the petition the demurrer sets forth that as to the merchandise or other taxable personal property alleged in said paragraph to have been omitted from taxation for the year 1930 there is given no description of the merchandise or other taxable personal property, nor the name or names of the owners thereof, nor the amount of such merchandise or other personal property, nor its nature and character.

As to paragraph 18 of the petition the demurrer sets forth that with reference to the taxable personal property alleged in said paragraph to have been omitted from as-

sessment or under-assessed there is given no description of the property, nor are the nature and character of such property shown.

The demurrer further sets forth that in none of the paragraphs of the petition mentioned in the demurrer has the relator set forth material facts necessary to show that it was the duty of the board of review to do the acts demanded of it, nor are there material facts set forth to show that there had been a violation by the board of review of the plain duty imposed by law upon it.

The writ of *mandamus* is a summary writ issued from a court of competent jurisdiction commanding the officer to whom it is addressed to perform some specific duty which the relator is entitled of right to have performed and which the party owing the duty has failed to perform. (*Fergus* v. *Marks,* 321 Ill. 510.) It is an extraordinary remedy, and one petitioning for such writ must show a clear and undoubted right to the relief demanded. (*People* v. *Nelson,* 346 Ill. 247.) It is a high prerogative writ and not a writ of right but is to be awarded in the discretion of the court, and ought not to issue in any case unless the party applying for it shall show a clear legal right to have the thing sought to be done and in the manner and by the person or body sought to be coerced and must be effectual as a remedy if enforced. (*People* v. *Hatch,* 33 Ill. 9; *People* v. *Sweitzer,* 339 id. 28.) The writ is not granted as a matter of absolute right, and will only issue in cases where it appears that under the law it ought to issue. The court will not order it in doubtful cases. *Kenneally* v. *City of Chicago,* 220 Ill. 485; *People* v. *Board of Supervisors,* 185 id. 288; *People* v. *Davis,* 93 id. 133.

That upon a sufficient petition and a proper showing of facts the board of review could be, and its successor can be, compelled by *mandamus* to assess property subject to taxation for the current year and such property when it has escaped assessment for previous years, or the board of

appeals may be so compelled to notify any person whose property is properly alleged to be subject to taxation, to appear before it to show cause why the said property should not be assessed for taxation, cannot be doubted. Paragraph 314 of the Revenue act (Smith's Stat. 1931, p. 2436,) provides: "The board of review shall, in any year, whether the year of the quadrennial assessment or not: First, assess all property subject to assessment which shall not have been assessed by the assessor, and list and assess all property real or personal that may have been omitted in the assessment of any year or number of years, or if the tax thereon, for which such property was liable, from any cause has not been paid, or if any such property, by reason of defective description or assessment thereof shall fail to pay taxes for any year or years, in either case the same, when discovered, shall be listed and assessed by the board in its revision of assessments, and the board may make such alterations in the description of real or personal property as it shall deem necessary."

In *mandamus* to compel the board of review or its successor to assess property subject to assessment the allegations of the petition must clearly show the name and residence of the owner of such property, its situs, its character and kind, and all facts necessary to show that it was, in fact, taxable and that it was the duty of the respondent to assess it. The allegations of a petition that the property is liable to taxation are mere conclusions of law and are not sufficient to show a duty resting upon the taxing authorities to assess the same. (*People* v. *Board of Review,* 326 Ill. 124.) Whether property is legally taxable at a particular place is a question of law and not of fact, and a pleader seeking to charge one with liability because his property is taxable at a particular place must therefore state the facts from which such liability results as a conclusion of law. (*People* v. *Davis,* 112 Ill. 272.) In *Bistor* v. *McDonough,* 348 Ill. 624, it is said: "The appellants

fail, for another reason, to state a case entitling them to the relief sought. Under Federal and local statutes considerable personal property is exempt from taxation. If the personal property, the omission of which from assessment is the ground of complaint, was exempt from taxation, the board of assessors had no authority to assess it. The appellants were required to allege facts from which it might be determined whether the omitted property was liable to assessment. No description of that property is given and in no instance is its situs or ownership disclosed. The allegations of the bill that the property was liable to taxation were mere conclusions of law and were insufficient." In *People* v. *Board of Review, supra,* where *mandamus* was sought against the board of review to hear 9200 complaints filed with the board by the relators about the assessment of property for the year 1926, the bill contained allegations as to omitted property almost identical with those in the present case, and it was there held that they were insufficient averments, the court saying: "The averment of conclusions of law cannot take the place of averment of facts, and the demurrers do not admit the conclusions averred in the petition." In *People* v. *Dixon,* 346 Ill. 454, this court said that a petition for writ of *mandamus* must set forth the material facts on which the petitioners rely, distinctly, clearly and specifically, so that they may be admitted or traversed, and the allegations must show a clear right on the part of the relator to have the desired act performed and the duty on the part of the respondent to perform the act.

It will be at once seen that when paragraphs 6, 8, 9, 10, 11, 12, 13, 14, 16, 17 and 18 are tested by appellants' demurrers specifically directed to each paragraph, and by the rules above set forth, such paragraphs do not contain sufficient averments of specific facts, as distinguished from conclusions of law, to require the awarding of the writ of *mandamus.* Paragraph 15 is not subject to most of the

defects of the other paragraphs mentioned but does not show the nature and character of the Chicago Board of Trade and the Chicago Stock Exchange or facts sufficient to show from whence they derive their power to function as entities. Neither does it show the nature and character of the memberships which are sought to be taxed, nor such a state of facts with reference thereto as would enable us to say, as a matter of law, upon such facts, that such memberships were or were not subject to taxation.

We are of the opinion that the petition for a writ of *mandamus* in this case does not so clearly, distinctly and specifically set forth the material facts on which the petitioner relies as to show such a clear right on his part to have the desired act performed and a duty on the part of the respondents to perform the act as to entitle the relator to a writ of *mandamus* in this case, and that the trial court should have sustained appellants' special and general demurrers. The cause is therefore remanded to the superior court of Cook county, with directions to sustain such demurrers.

*Reversed and remanded, with directions.*

STONE and JONES, JJ., dissenting:

We do not concur in the opinion adopted by the court. The petition alleges that a vast amount of property is escaping taxation, to the great injury of petitioner. It alleges with particularity that certain banks and trust companies in Cook county, a list of which appears in the petition, have under their control a vast amount of trust property and estates which have been assessed at less than two per cent of cash value. Much other property, including airplanes, yachts, boats, watercraft and automobiles is alleged to be unassessed for taxation. The petition alleges that in Cook county there are subject to taxation over 500,000 automobiles, of which less than 20,000 were assessed. The petition also avers that there are 800 memberships in the Chi-

cago Board of Trade, of the value of $12,000 each, and an itemized list of such memberships showing the name and address of each owner is listed. Three hundred and twelve memberships in the Chicago Stock Exchange, of a value of $31,000 each, together with the names and addresses of the owners thereof, are listed. The demurrer admits the truth of these averments. The opinion holds that the petition does not sufficiently describe the property and its location to authorize the issuance of a writ of *mandamus*. With this we cannot agree.

The purpose of a writ of *mandamus* is to require the officials to discharge their duty. (*People* v. *Webb,* 256 Ill. 364.) The petition prays that they be required to proceed according to law with the assessment of this omitted property. It does not ask that the court direct that the property therein designated be taxed. The writ, if awarded, would not conclude property owners upon any question affecting their rights. The facts set out in the petition regarding the property above referred to, when coupled, as they are, with a charge of fraud, are clearly sufficient to require an answer. The prayer of the petition is that these respondents be required to proceed under the statute to assess omitted property pointed out to them. Respondents form an investigating body. It is their business to assess such property as they find escaping assessment. To hold that all property alleged to have been omitted must be specifically described and located before those officers can be required to act is, in our opinion, not consonant with the provisions of the act concerning the duties of the respondents. In a county having so large a city as Chicago such a requirement virtually denies property owners any relief. While such fact does not, of course, justify a writ of *mandamus* on an insufficient petition therefor, the petition in this case described much of the property with sufficient particularity to require the respondents to act, and justified the issuance of the writ.