Michael J. Bransfield and Sons, Inc., Appellee, v. City of Chicago, Appellant.

Gen. No. 44,974.

Opinion filed November 10, 1950. Released for publication January 17, 1951.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, for appellant; L. LOUIS KARTON, Head of Appeals and Review Division, ROBERT J. NOLAN and HARRY H. POLLACK, Assistant Corporation Counsel, of counsel.

MARKMAN, DONOVAN & SULLIVAN, of Chicago, for appellee; JOHN P. SULLIVAN and JOHN A. BREEN, both of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

City of Chicago, defendant, appeals from an injunctional judgment order entered in a *mandamus* proceeding entitled *Michael J. Bransfield & Sons, Inc., plaintiff, v. City of Chicago, a Municipal Corporation, defendant.* The case was tried by the court upon the pleadings and evidence.

The petition of plaintiff alleges that the City of Chicago (hereinafter sometimes called City) issued special assessment bonds to anticipate the collection of special assessments levied against property assessed for the cost of a local improvement identified as City of Chicago Special Assessment Warrant 53716; that the bonds were issued to the contractor in payment for materials furnished and labor performed; that a major portion of said bonds, in the sum of $300,000, were purchased before maturity by plaintiff and it now owns bonds in that amount; that certain moneys were collected by City and applied in partial payment of said bonds; that there is due and owing on said bonds $300,000 and interest; that plaintiff from time to time has demanded payment of the bonds out of funds collected from owners of the property assessed and "also out of monies collected by the City of Chicago and held by it under and by virtue of Chapter 24, Section 15–10 of the Illinois Revised Statutes 1947 [Jones Ill. Stats. Ann. 21.1393]"; that City now holds a large sum of money in said fund, "which sum has not been expended for 'paying any expense of the municipality in connection with the collection or withdrawal from collection of any delinquent special assessment or special tax or for the preservation of the lien thereof, or in connection with the sale or forfeiture of any real estate for delinquent special assessments or special taxes, or in the preservation of the lien of any certificate of sale

or tax deed,' '' and that said sum, by virtue of said statute, is, therefore, available and can and should be used to ''pay any warrant for which there are not sufficient funds, for the payment of past due principal or interest on vouchers and bonds issued in anticipation of the collection of the special assessments or special taxes identified by such warrant''; that the bonds and coupons owned by plaintiff under said warrant ''come within the scope and description of bonds described in said section of the statute and that said money now in said fund should be used for such purpose''; that plaintiff has made demands upon City for the use of such funds for such purpose, but City neglects and refuses to use said moneys so available, in direct contravention of the terms of the statute. Petitioner prays that a writ of *mandamus* issue directing and commanding defendant City and the officials thereof to perform their duties regarding the use of moneys in said fund; that defendant City and its officials *be required to pay said moneys into Special Assessment Warrant 53716 and thereupon pay to plaintiff upon its bonds plaintiff's proportionate share of said funds.* The judgment order found that plaintiff had purchased from the contractor bonds in Warrant No. 53716 in the sum of approximately $250,000; that certain moneys have been collected by City and applied in partial payment of said securities but there was still due and owing plaintiff on said bonds the sum of $262,454.94, together with interest; that plaintiff has from time to time presented said bonds to said defendant and demanded payment ''not only out of funds collected from owners of property assessed for the construction of said improvement, but also out of moneys collected by the City of Chicago and held by it under and by virtue of Chapter 24 Section 15–10 of the Illinois Revised Statutes, 1947 . . .''; *that City has the sum of $126,762.27 in the said fund*

*so created;* that the appropriation ordinance in each of the years 1948 and 1949 appropriated out of said fund the sum of $133,000, " 'for the purpose of retiring any outstanding special assessment bonds and vouchers that may at any time be unpaid or delinquent by reason of any deficiency in warrants and for the purchase of delinquent property on sale for city special assessments'; that said appropriations come within the scope of the aforesaid section of the statute which establishes the fund for, among other things, the purpose of paying 'any warrant for which there are not sufficient funds, for the payment of past due principal or interest on vouchers and bonds issued in anticipation of the collection of the special assessments or special taxes identified by such warrant'; *that said sum of $126,762.27 is, therefore, available and can and should be used, and it is the positive statutory duty of the City of Chicago to use said monies, for the payment of outstanding special assessment bonds, vouchers and interest thereon owned and held by plaintiff. . . in the aforesaid City of Chicago Special Assessment Warrant Number 53716."* The judgment orders, adjudges and decrees that a peremptory writ of *mandamus* issue directing City and its officials *to pay $123,762.27* (the record shows that the drafter of the order intended to make that figure $126,762.27) *"out of the monies now held by the City of Chicago under and by virtue of Chapter 24 Section 15–10 of the Illinois Revised Statutes, 1947, into City of Chicago Special Assessment Warrant Number 53716 and thereupon to pay the plaintiff herein upon its bonds, vouchers and coupons plaintiff's respective proportionate share of said funds."*

While the evidence at the hearing was presented in an informal manner, the facts, material to a decision, seem to be undisputed. Plaintiff has been for many years engaged in the business of buying and selling

special assessment bonds. At the time of the trial it owned the major part of the bonds in Warrant No. 53716 and there was due upon said bonds $262,454.94. At the hearing it appeared that there were outstanding 60,000 to 70,000 past due special assessment bonds aggregating $16,000,000, involving "possibly 5,000 warrants." There was $126,762.27 cash in the Fund. Prior to the suit holders of bonds under Warrant 53716 had been paid more than 50% of the face value of their bonds. There was an account kept by City called "Penalties and Interest on Special Assessments," but it was generally called the Fund. Both plaintiff and defendant call it the Fund. The Fund was created under Section 10 of Article 15 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1947, ch. 24, par. 15–10). A division of the comptroller's office of City, in accordance with a provision of the Act, collected special assessment payments, and the collections were placed in the Fund. In accordance with another provision of the Act, City first used the moneys in the Fund for paying the expenses of maintaining the division. "When there was enough money available it was distributed amongst the warrants that had bonds outstanding." City contributed annually approximately $85,000 to help maintain the division. Approximately $1,700,000 was collected annually by the division and "paid into the various special assessment warrants." Par. 15–10 of the Act sets forth the purposes for which the money in the Fund shall be used. City is first permitted to use the money in the Fund for paying "any expense of the municipality in connection with the collection or withdrawal from collection of any delinquent special assessment." The Act then provides that the Fund "shall be used to pay any warrant, for which there are not sufficient funds, for the payment of past due principal or interest on vouchers and bonds issued in anticipation of the

211

collection of the special assessments or special taxes identified by such warrant.'' In its petition plaintiff bases its right to a judgment order upon this last provision. The disbursement of money in the Fund is fixed annually by the City Council. The instant suit was filed December 21, 1948, and City filed its answer on January 5, 1949. At that time the City Council had already made the appropriations from the fund for the year 1949. The appropriation ordinance provides, *inter alia,* the following: ''For the purpose of retiring any outstanding special assessment bonds and vouchers that may at any time be unpaid or delinquent by reason of any deficiency in warrants and for the purchase of delinquent property on sale for City special assessments—$133,000.00.''

At the outset it must be noted that the judgment orders City to pay into Warrant 53716 practically all of the money in the Fund, although there were then 5,000 warrants outstanding in which bonds had not been fully paid. It must also be noted that there is no claim—certainly no proof—that collections from bonds in Warrant 53716 made up the cash on hand in the Fund, in whole or in part.

██ Defendant states that it is admitted that the Fund was created under Section 10 of Article 15 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1947, ch. 24, par. 15–10) and strenuously contends that the money in the Fund not used for any expense of the municipality in connection with the collection or withdrawal from collection of any delinquent special assessment is a trust fund and must be used for the benefit of all the holders of past due special assessment bonds; that all the holders of past due bonds have equal rights in the Fund and are entitled to a *pro rata* distribution of the money in the Fund, $126,762.27; that there is a duty on City as trustee of the Fund to preserve the same for the benefit of all the holders of past due bonds

and without preference; that the judgment order entered was beyond all doubt a preferential treatment of the bonds in Warrant No. 53716. Defendant cites in support of this contention the well known case, *Rothschild v. Village of Calumet Park,* 350 Ill. 330, and earnestly insists that the Supreme court intended by its ruling in that case to stop the practice by municipalities of making preferential payments in the matter of special assessment installment bonds, and it argues that in the absence of a judicial interpretation of par. 15-10 that paragraph should be interpreted in the light of the rules laid down in the *Rothschild* case. There the court states (pp. 338, 339):

" . . . We have held that the proceeds of special assessments *are trust funds* for the payment of the bonds issued for the cost of the improvement. (*Conway v. City of Chicago,* 237 Ill. 128.) The theory of the statute is, that the bonds issued against each installment of the assessment, together with the interest on them, will be paid as the installment and the interest on it are collected. The installments are payable on January 2 of each year and the bonds will be due at a later date in the same year. *The installments are the only source of payment of the bonds, and when they are collected by the municipality the money received becomes a trust fund for the payment of the bonds to the holders, without preference among them.* If for any reason the full collection of an installment is not made the deficiency must fall upon the bondholders, and *equity* requires that the loss shall be borne ratably by each bondholder. Therefore, when the bonds of any year become due and the collection from the installment of that year is insufficient to pay them, the bondholders are entitled to the amount collected, and *it is the duty of the trustee—the municipality—* to pay upon each bond issued against the installment its share, *pro rata,* of that amount." (Italics ours.)

213

While it is true that the court was not called upon in the *Rothschild* case to interpret par. 15–10 of the Act in question, nevertheless, that case involves the collection of special assessment installments by a Village, the nature of the proceeds of the collections, and the duties of the municipality as a trustee as to the proceeds, and, in our judgment, the wholesome rules laid down in the *Rothschild* case are applicable to the situation present in the instant proceeding. We are satisfied that the preference shown plaintiff and the other bondholders in Warrant No. 53716 violates the rulings in the *Rothschild* case. Plaintiff's counsel, in an effort to sustain the judgment order, are forced to rely upon grounds that we think are devoid of merit.

██ Plaintiff first contends that all of the bondholders, save plaintiff, have slept upon their rights, and that our Supreme court, in a number of decisions, has applied the "first come, first served" rule where vigilant holders of claims against a municipality have applied to the courts to enforce their legal rights, and that in *People ex rel. Farwell v. Kelly,* 367 Ill. 631, 632, the court has shown "a clear indication of a disposition . . . to reward a claimant who displays diligence in his efforts to collect from a municipality." This contention ignores the fact that in the instant case the money in the Fund is a trust fund for the payment of the bonds to all the holders *without preference.* The rule plaintiff seeks to invoke does not apply to the instant trust Fund. The case cited involved a *mandamus* suit to compel the City to pay four judgments that were entered in personal injury suits against the City. *People ex rel. Farwell v. Kelly,* 367 Ill. 616, cited by plaintiff, involves a condemnation judgment against the City, and payment of such a judgment is required to be made by the City on demand by Sec. 13 of Art. II of the State constitution. In *People ex rel. Farwell v. Kelly,* 361 Ill. 54, cited by

plaintiff, the same situation is present. In the instant case City is not obligated to pay the bonds. In *People ex rel. Herlihy Mid-Continent Co. v. Nudelman,* 370 Ill. 237, 241, cited by plaintiff, the relator sued for a writ of *mandamus* under the Retailers' Occupation Tax Act, to compel certain State officials to refund taxes paid by the relator. There a fund had been created to make such refunds, and the relator was merely seeking to get back his own money. There is no merit in the instant contention. The record shows that after plaintiff's petition was filed the suit of *Edith M. Schreiner et al. v. City of Chicago* was commenced in the Superior court of Cook county. There the plaintiffs, holders of past due special assessment bonds, purporting to act for themselves and all persons similarly situated, seek a proportionate distribution of the money in the Fund, and they pray for an injunction restraining the City from paying out of the fund any money to the instant plaintiff. That suit is still pending. Defendant argues, with force, we think, that the instant judgment "opens the door to countless suits against the City by holders of past due bonds."

Plaintiff states that the Act of the Legislature creating the Fund provides that the Fund can be used "for the purpose of paying *any* outstanding special assessment bonds or vouchers . . . ," and that the City Council in appropriating the sum of $133,000 from the Fund used the following language: "For the purpose of retiring *any* outstanding special assessment bonds and vouchers," and plaintiff argues that the statute and the appropriation ordinance "specifically permits the use of the money to apply on '*any* warrant for which there are not sufficient funds' '"; that the use of the word "any" in the Act, instead of the word "all," is highly important, and justified the trial court in entering the instant judgment. Plaintiff's argument amounts to this, that the use of the word

215

"any" in the Act permitted the trial court to apply the "first come, first served" rule and to enter the judgment order. The instant contention admits, in effect, that the judgment is a preferential one, and seeks to justify it by a strained interpretation of the Act, one that violates the spirit of the ruling in the *Rothschild* case. In view of the highly preferential and inequitable character of the instant judgment, it is difficult to believe that this last contention is seriously made.

■ Plaintiff claims that "the City continued to pay money out of this fund into certain selected warrants as late as 1937," and that "the City of Chicago is bound by its previous interpretation of the Act as authorizing the City to use the fund to pay 'any' warrant selected by the City instead of applying the money to all the outstanding warrants." Defendant states that that there is nothing in the record to sustain this statement of plaintiff as to past conduct of City. It is not necessary for us to decide this question of fact. Even if City, in the past, acted as plaintiff claims, that fact would not estop City from performing its duty as a trustee in the instant suit. As heretofore stated, the ruling in the *Rothschild* case was intended to stop the practice by municipalities of making preferential payments in the matter of assessment bonds.

■ Plaintiff contends that City "has no right to use this fund for collection expense"; that it was not until 1934 that the Act was amended so as to give City the right to use money in the Fund for the expenses of running the division in the comptroller's office; that plaintiff's bonds were issued before 1934, and therefore City has no right to assert a paramount right to the fund as against plaintiff. We are not called upon to pass upon the question involved in this strained contention, for if we assume that City had no right to use this Fund for expenses of the division as against

216

plaintiff, that fact would not justify the entry of the judgment order.

Plaintiff *states* that the evidence indicates that it would cost more than $133,000 in clerical hire to allocate and distribute $126,762.27 to the 60,000 to 70,000 bonds in the 5,000 special assessment warrants outstanding and that if the money in the Fund, $126,762.27, were divided among all the bondholders each bondholder would receive less than one cent on the dollar; that the Fund is continually accumulating from the sources provided in the statute and that counsel for defendant need not fear that the Fund will be bankrupted by the payment to plaintiff; that ''the zeal with which the defendant now defends the fund in behalf of all bondholders is, to say the least, astounding in the light of past actions of the defendant.'' Plaintiff does not contend that the alleged facts in the statement justify the judgment order. We note that plaintiff does not mention in the statement the all-important fact that the judgment orders City to pay into Special Assessment Warrant No. 53716 practically all of the money in the Fund. The purpose of the statement is obvious.

██ Defendant raises a second contention in support of its argument that the trial court erred in entering the judgment order, viz., that in any view of the record plaintiff failed to prove a clear right to a writ of *mandamus,* and cites *Friedman v. City of Chicago,* 374 Ill. 545, which holds (p. 551): ''It is a matter so well settled as to need no citation of authorities, that one seeking a writ of *mandamus* must show a clear right to the writ . . . .'' We believe this contention is a meritorious one. The rulings we have made upon points raised by plaintiff and defendant, if correct, strongly support defendant's contention. The nature of the grounds urged by plaintiff in defense of the judgment

order shows, in our judgment, that it had not a clear right to the writ. Plaintiff's prayer in its petition was that *the money in the Fund* should be used for the payment of outstanding special assessment bonds in Warrant No. 53716, and the order entered followed the prayer. There is no claim—certainly no proof—that the cash on hand in the fund was made up in whole or in part by collections from bonds in Warrant No. 53716.

Neither the facts nor the law support the highly inequitable mandatory judgment entered in the instant case. An affirmance of the judgment order would, we think, encourage a resumption of the preferential payments by City in the matter of special assessment bonds.

The judgment order in the instant case is reversed.

*Judgment order reversed.*

Schwartz, P. J., and Friend, J., concur.