Loewenthal Securities Company, and Bankers Life Company, Appellees, v. City of Chicago, Appellant.

### Gen. No. 45,265.

Opinion filed April 9, 1951. Released for publication May 7, 1951.

JOHN J. MORTIMER, Acting Corporation Counsel, of Chicago, for appellant; L. LOUIS KARTON, Head of Ap-

peals and Review Division, and HARRY H. POLLACK, Assistant Corporation Counsel, both of Chicago.

MARKMAN, DONOVAN & SULLIVAN, of Chicago, for appellees; JOHN P. SULLIVAN, and THOMAS C. DONOVAN, both of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Defendant appeals from an order awarding a writ of mandamus issued against it, its officers and officials, and the city council, requiring them to pay the moneys in the fund known as the "unclaimed rebate fund," created by chapter 24, pars. 86–4 to 86–9, inclusive, Illinois Revised Statutes, 1947 [Jones Ill. Stats. Ann. 21.2334 to 21.2339], into the City of Chicago special assessment fund covering certain warrant numbers (listing them), out of which defendant was then to pay plaintiffs upon their bonds, vouchers or coupons, and interest. The statute in question, par. 86–4, provides as follows:

"Any municipality having any undistributed or unclaimed money received from the making of any local improvement paid for wholly or in part by special assessment or special taxation, and which money has remained in the possession of the municipality for a period of eight years or more undistributed or unclaimed as a rebate or refund, after the provisions of the Local Improvement Act or article 84, as the case may be, have been complied with in regard to refunds or rebates, may set aside and transfer the money, so undistributed or unclaimed, into a special fund to be known as the 'unclaimed rebate fund.' This fund may be used as provided in sections 86–5 to 86–9, inclusive."

Paragraph 86–8 provides:

"Any municipality having an 'unclaimed rebate fund' created as provided in sections 86–4 to 86–6, in-

160

clusive, by ordinance may direct the use of the money in that fund for the purpose of paying all rebates or refunds due on warrants for any special assessment or special tax, or for the purpose of paying unpaid special assessment vouchers or special assessment bonds, or special tax vouchers, or interest, or deficiency in interest, or public benefits, or for the purpose of purchasing any lot, block, tract, or parcel of land, or any real estate, at any sale had to enforce the collection of special assessments or special taxes. However, this ordinance *shall prescribe and limit by specific appropriation, the amount of money in the specified fund to be used for each of these enumerated purposes respectively.*" (Italics ours.)

It will be noted that the latter section of the Act requires the ordinance to appropriate a specific amount of money out of the fund to be used for each of the enumerated purposes respectively.

It appears from the pleadings, as well as the evidence, that the appropriation ordinance of the City of Chicago for the year 1949 appropriated $260,000 out of said unclaimed rebate fund, which ordinance provided:

"For paying all rebates or refunds due on warrants for any special assessments or special tax; or for the purpose of paying unpaid special assessment vouchers or special assessment bonds; or special tax vouchers, or interest, or deficiency in interest, or public benefits; or for the purpose of purchasing any lot, block, tract or parcel of land or any real estate at any sale held to enforce the collection of special assessments or special taxes: To be expended upon direction of the City Council."

This ordinance appropriated the amount for all of the four purposes specified in the statute, but not a specific amount for each purpose, and provided that the money was to be expended upon the further direction of the city council. No such direction followed

161

the appropriation of 1949, and it is neither alleged nor shown that such direction had been made by the city council. It will also be noticed that the appropriation ordinance allocated the lump sum for the four purposes designated in the statute and was therefore not a compliance with the statute cited, which required specific appropriation of the amount of money in the specified fund to be used for "each" of the enumerated purposes. It is obvious that the city council intended by later direction to allocate a specific amount to be devoted for each of the specific purposes named in the statute.

The peremptory writ of mandamus was not only directed against the City and its officials but also against the aldermen of the City of Chicago (naming them), constituting the city council, to perform their respective legal duties with regard to the appropriation of said sum of $260,000. Under these circumstances, where the city council reserves, as it did by the appropriation ordinance, the right to direct in the future the expenditure and allocation of said fund to any one or more of the purposes enumerated in the statute, the courts cannot by mandamus control the judgment and discretion of the city council as to the expenditure of said fund and the amount to be allocated to each of the specific purposes set out in the statute. *People v. Allman,* 382 Ill. 156; *People v. City of Chicago,* 234 Ill. 416; *Catholic Foreign Mission Society of America, Inc. v. Village of Glen Ellyn,* 339 Ill. App. 565.

In *People v. Board of Commissioners,* 397 Ill. 293, 305, it was said:

"A court will not issue a writ the effect of which command would be to substitute the court's judgment or discretion for that of the body which is commanded to act. The application of the writ is restricted to

directing that action be taken and it is not available to direct what action shall be taken.''

It was alleged in the answer of the defendant, and stands undenied upon this record, that there were many other holders of such special assessment bonds and vouchers in the same class with these plaintiffs, and it is the contention of the defendant that, if distribution were made of the amount appropriated, it would have to be on a *pro rata* basis to each of such holders. It is the theory of defendant that once the fund is appropriated and paid into the special assessment fund for the payment of these warrants and vouchers, the duty of the city is made clear by the holding in *Rothschild v. Village of Calumet Park,* 350 Ill. 330, which treats the fund as a trust fund and must be paid to the special assessment bond and voucher holders ratably, without preference among them. The court there said:

''The installments are the only source of payment of the bonds, and when they are collected by the municipality the money received becomes a trust fund for the payment of the bonds to the holders, without preference among them. If for any reason the full collection of an installment is not made the deficiency must fall upon the bondholders, and equity requires that the loss shall be borne ratably by each bondholder.''

This court (Second Division) in *Bransfield v. City of Chicago,* 342 Ill. App. 206, passed upon the identical contention raised by the defendant in the instant case and, following the holding in the *Rothschild* case, sustained this contention. Leave to appeal was denied by the Supreme Court in the *Bransfield* case, *supra.*

Plaintiffs' theory respecting the rights of other holders of such assessment bonds or vouchers rests upon the so-called ''first come, first served'' doctrine.

163

They rely upon *People ex rel. John V. Farwell Co. v. Kelly,* 361 Ill. 54, and *People ex rel. Farwell v. Kelly,* 367 Ill. 631, to sustain their theory. A careful reading of these cases will readily disclose that the factual situation is quite different from the instant case. They had to do with forcing the payment of judgments held against the City; they had nothing to do with a trust fund theory such as was involved in the *Rothschild* case and the instant case, and must be distinguished on that basis. The *Bransfield* case effectively disposes of the "first come, first served" doctrine adversely to plaintiffs' position.

Plaintiffs have not shown such a clear legal right as could be enforced by mandamus. *Daniels v. Cavner,* 404 Ill. 372; *People ex rel. Koester v. Board of Review of Cook County,* 351 Ill. 301.

The judgment of the Superior Court is reversed.

*Reversed.*

NIEMEYER, P. J. and TUOHY, J., concur.