**George D. Hardin, Appellant, v. City of Chicago, and Robert B. Upham, Comptroller, Appellees.**

**Gen. No. 45,737.**

■■■

Opinion filed November 6, 1952. Rehearing denied November 24, 1952. Released for publication December 9, 1952.

HOWARD & HASTEROCK, of Chicago, for appellant; MARSHALL S. HOWARD, of Chicago, of counsel.

JOHN J. MORTIMER, Corporation Counsel of Chicago, for appellees; L. LOUIS KARTON, Head of Appeals and Review Division, and HARRY H. POLLACK, Assistant Corporation Counsel, both of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff appeals from an order of the circuit court denying his petition for a writ of mandamus to compel the City of Chicago and its comptroller to pay over to him so-called penalty interest collected by it on special assessment against which petitioner held the only outstanding voucher.

The matter was submitted to the trial court on a written stipulation of facts, and two exhibits which were received in evidence without objection. The un-

controverted facts disclose that petitioner was a contractor who furnished labor and material for the laying of water-service pipes over some 3,300 feet in Jeffery avenue, in Chicago, Illinois, pursuant to a contract with the city.

In payment of his labor and material he received a voucher certifying that he was entitled to the sum of $4,851.30 payable from the collections of the special assessment spread against certain real estate and known as Warrant No. 53604. The voucher was dated December 10, 1929 and reads as follows: "I hereby certify that George D. Hardin is entitled to the sum of Forty-eight hundred fifty-one and 30/100 Dollars, on contract ~~thereon at the rate of six per cent per annum from date hereof,~~ payable annually or when and as thereafter collected and in the City Treasury. This voucher is given under the provisions of that certain act of the General Assembly of the State of Illinois, entitled 'An Act concerning Local Improvements,' approved June 14, 1897, and in force July 1, 1897 (and the amendments thereto), and is issued in FINAL payment for work, labor and material, done, performed and furnished, in accordance with a certain contract with the City of Chicago, dated April 13, 1929, for Water Service Pipes in the streets named below. By accepting this voucher the holder thereof expressly agrees that the City of Chicago shall and does have the right to pay the whole or any part thereof at any time after the date hereof. The agreement of the contractor accepting this voucher, as hereafter appearing, is hereby made a part of this voucher." It should be noted from the foregoing that the provision for payment of interest was stricken from the voucher before it was issued. The assessment, due January 2, 1930, was only partially paid and that portion remaining unpaid was returned as delinquent about July 1, 1930. Thereafter,

between September 4, 1930 and June 7, 1932, payments totaling $1,881.30 were made, without penalty. The sums so received by the city were paid over to petitioner and endorsed on his voucher, thereby reducing the amount due him to $2,970. On April 2, 1931, at a sale of the property on account of the delinquent special assessment, for want of other bidders the city had become the purchaser and was issued certificates of sale for the delinquent lots, in conformity with procedure authorized in section 72 of the Local Improvements Article (Cahill Ill. Rev. Stat. 1929, ch. 24, art. IX, par. 200).

On November 14, 1933, in redemption of a certificate of sale, the city received $207.28 principal and $6.21 penalty, out of which petitioner was paid $213 principal, which sum was endorsed on his voucher, thereby reducing the amount due him to $2,757. On February 4, 1946, in redemption of a certificate of sale, the city received $155.43 principal and $137.24 penalty, and paid petitioner $293 principal which was endorsed on the voucher, thereby reducing the amount due him to $2,464. Thereafter, on January 8, 1948, in redemption of a certificate of sale, the city further received $1,124.57 principal and $1,241.21 penalty. It tendered to petitioner the sum of $2,464 due him. He refused that amount but accepted $2,463 principal, which was endorsed on his voucher, leaving due him $1.00.

It is petitioner's contention that, notwithstanding the fact that the voucher did not provide for interest, nevertheless he is entitled to the penalty interest, as he calls it, collected by the city on the special assessment from the various property owners because of their delinquency in payment. The trial court denied the prayer for a writ of mandamus, found the issues for defendants, and dismissed the suit. The question presented is whether petitioner is entitled to the aggre-

292

gate sum of $1,878.60 in penalty interest, in addition to the one dollar principal remaining due on the assessment voucher.

An examination of petitioner's voucher shows that every time he received a payment it was credited as principal and deducted in full from the total amount due him. He never demanded any interest on his voucher between the first payment made to him on September 4, 1930 and the last one on January 8, 1948, and there is nothing in the record to indicate that he accepted the payments as anything but in full of the amount due him. It was not until June 9, 1949, when there still remained a balance of $1.00 which he refused to take, that petitioner first demanded that he be paid "all interest or penalties or penalty interest or sums of any kind or description now collected or hereafter to be collected by the City of Chicago from property owners owing Special Assessment Warrant No. 53604."

██ Petitioner takes the position that special assessment collections, when received by a municipality, are trust funds held by it for the benefit of bond and voucher holders, and must be paid over to them, and his counsel argue that it would be repugnant to all legal and equitable principles, and to the law applicable to trusts and their beneficiaries, to permit a trustee to charge and collect penalty interest because of delinquency on payment of a principal obligation due to its beneficiary, pay to the beneficiary only the bare principal, and pocket for its own profit all the interest money so collected; and they say that this is what the city seeks to do in this case. In support of their contention they rely principally on *Conway v. City of Chicago*, 237 Ill. 128, *Rothschild v. Village of Calumet Park*, 350 Ill. 330, and the recent case of *Michael J. Bransfield & Sons, Inc. v. City of Chicago*, 342 Ill. App.

206. In the *Conway* case, the city collected the special assessments, but instead of paying the special assessment bonds in full, diverted a portion of the money so collected to other funds; there the court properly applied the trust fund doctrine to the funds unlawfully diverted. The *Rothschild* case involved a bill in equity brought by an owner of local improvement bonds against the village which had collected a large part of the assessments covered by such bonds, commingling the funds collected on the various installments, paying certain bonds in excess of the collections applicable to such bonds and failing to make payments on other bonds. The court held that the proceeds of special assessments are trust funds for the payment of the bonds issued for the cost of the improvement, and that plaintiff was entitled to his pro rata share of the proceeds from the payments made. In the *Bransfield* case plaintiff was attempting to seize an account known as ''Penalties and Interest on Special Assessments'' as payment of its past due special assessment bonds, but the court held that a fund created by the city from penalties and interest on special assessments, after payment of certain expenses, was a trust fund for the benefit of all holders of past-due bonds issued in anticipation of collection of special assessments, and that each holder had an equal right in the fund and was entitled to a pro rata distribution of the proceeds. Although it is true that under certain circumstances it has been held that special assessment funds in the hands of a municipality are trust funds, the factual situations present in the cases cited by petitioner do not exist in the case at bar, and accordingly petitioner's authorities afford no support to his contention that the trust-fund doctrine should be applied here.

██ At the time petitioner was accepted as the successful bidder for the improvement and when he en-

tered into the contract with the city, he knew that the voucher he would receive in payment of his work would not bear interest. The contract did not provide for interest, and on the voucher accepted by him the interest provision was specifically stricken. His contract and voucher called for the payment of $4,851.30— nothing more. This was the entire amount that the city had contracted to pay him, and then only "when and as thereafter collected and in the City Treasury." The special assessment involved was to be paid for in a single or flat payment, and under the ruling of *McChesney v. City of Chicago*, 213 Ill. 592, the voucher could not bear interest.

One of the petitioner's complaints is that he had to wait over a period of eighteen years for his money. It is clear, however, that the city paid him on his voucher the special assessment payments as they were received by the city, thus fulfilling the only obligation owed by the city to petitioner under the contract between them. The acceptance of the contract and the voucher providing for payment "when and as thereafter collected" was voluntary and binding on petitioner.

Considerable space is devoted in the respective briefs to a discussion of whether mandamus will lie in the situation presented; but in view of our conclusion as to the merits of the case, we consider it unnecessary to discuss this proposition.

We find no convincing reason for reversal; the judgment of the circuit court denying petitioner's writ is therefore affirmed.

*Judgment affirmed.*

NIEMEYER and BURKE, JJ., concur.